LEONARD v. WOODRUFF.

1. TENDER—CONDITIONAL TENDER INEFFECTIVE.
   Tender, to be effective, must be without qualification or condition.

2. BROKERS—TENDER OF BALANCE OF PURCHASE PRICE—CONDITIONAL TENDER.
   Bank's letter to broker making payment of broker's draft on customer for balance of purchase price of stock purchased on margin conditional on broker's waiver of other claims against customer was insufficient tender to enable customer to sue for money paid on purchase price and value of collateral deposited with broker.

3. SAME—EXCHANGING CUSTOMER'S STOCK.
   Broker depositing customer's stock conditionally for exchange for stock in merged corporation did so at own risk.

4. SAME—CONVERSION—TENDER—RECOUPMENT.
   Where broker, sued by customer for money paid on purchase price of stock bought on margin on theory that stock had been converted, tendered said stock or its equivalent, it was entitled, on recoupment, to judgment for balance due.

Appeal from Kent; Perkins (Willis B.), J. Submitted April 20, 1932. (Docket No. 59, Calendar No. 36,376.) Decided June 23, 1932. Rehearing denied September 14, 1932.

Case by Michael Leonard against Don M. Woodruff and others, copartners doing business as Don M. Woodruff & Company, for conversion of stocks carried on a margin account. Recoupment by defendants for balance due on account. Judgment for defendants. Plaintiff appeals. Affirmed.

*Travis, Merrick, Johnson & McCobb* (*Thomas N. Robinson*, of counsel), for plaintiff.

*McAllister & McAllister*, for defendants.

Butzel, J.   Michael Leonard, plaintiff, a Grand Rapids representative of a large insurance company, also solicited business through the Detroit office of the company.   On October 2, 1929, while in Detroit, he called upon Abraham Ghysels, a former resident of Grand Rapids who had moved to Detroit and was employed by the brokerage firm of Don M. Woodruff & Company, defendants herein.   During the previous four years, Leonard had been purchasing stock, sometimes for cash and occasionally on margin, from a number of brokerage houses.   On his visit to Ghysels' office, his interest was aroused in Grand Rapids Savings Bank stock, which had been rapidly and continuously advancing in price, and the market in which was very active.   Ghysels told Leonard that he purchased stock in the Grand Rapids Savings Bank for his wife because of the report that the bank would be merged with the Union Commerce Group of Detroit.   Rumors of large bank mergers were rampant and there was much speculation in bank stocks at the time.   The following day plaintiff gave defendants, through Ghysels, a firm order to purchase 10 shares of the stock at the market, which he was informed was around $1,225 per share.   Defendants executed the order, together with another one for a like number of shares, by purchasing 20 shares from E. H. Collins & Sons, brokers, for $1,215 per share, and charged plaintiff such cost plus $10 a share for commission, thus making the total price $12,250.   There appears to be no dispute over the reasonableness of the commission charged.   Under the proposed plan of merger, 5 shares of Union Commerce Group stock were to be exchanged for each share of Grand Rapids Savings Bank stock.   Testimony shows that defendants had additional stock on hand, some of it being held for the account of Mrs.

Ghysels, but they had at all times a sufficient number of shares, either in the form of stock or interim depositary receipts, for the exchange of the Guardian Union stock, as hereinafter stated, to enable them to make deliveries to all customers who had purchased the stock.

Plaintiff paid $3,000 on the purchase price, and deposited as additional collateral 20 shares of Peoples Wayne County Bank stock, and, subsequently, 100 shares of Winters & Crampton Class "A" stock. The proposed merger of the Grand Rapids Savings Bank with the Union Commerce Group did not materialize, but a merger with the Union Guardian Group was thereafter planned, the latter company being a large holding company into which the Union Commerce Group was also merged. The new merger proposed had proceeded so far that on November 15, 1929, 7,469 out of the 7,500 shares of Grand Rapids Savings Bank had been deposited with the Guardian Trust Company as depositary, so that they might be exchanged for stock of Guardian Detroit Union Group, Inc., if certain conditions were met. In that event 5 shares of Guardian Detroit Union Group, Inc., stock were to be issued for each share of Grand Rapids Savings Bank stock. The exchange was to be made on or before December 1, 1929, but the time was later extended to February 1, 1930. Defendants deposited all of the stock held by them, including the 10 shares purchased for plaintiff, and received depositary receipts of the Guardian Trust Company. The record indicates that plaintiff contemplated and desired the stock he bought to be exchanged. On October 11, 1929, he wrote defendants that "if the market on Union Commerce stock improves, I would like to protect myself. Perhaps this will be possible in a day

or two some place over 250.'' There is no showing, however, that he either directly gave or withheld his consent to the depositing of his shares for exchange into stock of the Guardian Detroit Union Group, Inc.; on the other hand, there is every indication that defendants acted in the best of faith in trying to look after plaintiff's interests and they together with the holders of over 99½ per cent. of the Grand Rapids Savings Bank deposited the stock for exchange if certain conditions were met. While negotiations for the exchange were pending, the first stock market crash of 1929 occurred, with a large decline in prices of stock.

On December 13, 1929, plaintiff went to the American National Bank of Grand Rapids, with whom he claims he made arrangements for a loan, and asked it to send defendants a letter, a copy of which plaintiff had prepared and left with the bank. In this letter which the bank sent, it requested defendants to send a draft on plaintiff for the balance due and attach to the draft the 10 shares of Grand Rapids Savings Bank stock and the other stock deposited by plaintiff to protect his margin account. It further stated that the payment of the draft was conditional on defendants' waiver of all claims against plaintiff on account of purchases for his account of some other stock not involved in the present suit, and claimed to have been bought without plaintiff's authority. It further qualified the letter by stating:

''If drawn for the proper amount and accompanied by the proper certificates for the stocks in question, we have no doubt the draft will be honored.''

Upon the arrival of the draft, plaintiff went to the bank, examined the accompanying certificates, and, the same day, brought suit against defendants for the

$3,000 and interest and the value of the collateral deposited with defendants, and at the same time garnisheed the American National Bank of Grand Rapids. Ghysels phoned Leonard the following day, and told him he had been assured by the Grand Rapids Savings Bank that Leonard could exchange the depositary receipt for Grand Rapids Savings Bank stock, but Leonard refused to give him any satisfaction. Another witness also testified that a day or two later he offered on behalf of defendants to give plaintiff Grand Rapids Savings Bank stock, and plaintiff stated he had no interest in the matter. Plaintiff denies this conversation.

Defendants ask us to infer from the nature and sequence of events that the demand for the forwarding of the draft and securities was solely for the purpose of enabling plaintiff to bring suit and garnishment proceedings. There is no direct evidence to substantiate this claim. We do hold, however, that there was no unqualified tender of payment. The letter of the bank to defendants contained certain conditions, and only stated that it was the belief of the bank that plaintiff would pay the draft. A tender, to be effective, must be without qualification or condition. *Zells* v. *Stockwell*, 171 Mich. 268, 270; *Noyes* v. *Wyckoff*, 114 N. Y. 204 (21 N. E. 158); *United States* v. *World's Columbian Exposition,* 56 Fed. 630; *Irvin* v. *Gregory*, 13 Gray (79 Mass.), 215. The tender was insufficient.

Plaintiff claims that defendants had no right to exchange the stock for Guardian Detroit Union Group, Inc., a Michigan corporation, even if there was authority to exchange it for Union Commerce Group, a Delaware corporation, and the attempt to exchange it without plaintiff's consent amounted to conver-

sion, whereby defendants became liable. The trial judge rendered a judgment in favor of defendants against plaintiff for the balance due them, and gave them a lien on the stock held by them as security.

A number of questions are raised on appeal. They have been answered in the foregoing statement of facts, with the exception of the question of whether defendants became liable to plaintiff upon depositing the 10 shares of stock for exchange into 50 shares of Guardian Union Group, Inc., stock. No valid tender on the part of plaintiff has been shown. Defendants may have been at fault, even though they acted in good faith, in depositing the stock conditionally for exchange. They did this at their own risk. Had a valid tender of payment been made and an *interim* receipt been offered him, or had the stock been exchanged without plaintiff's consent, a different question would arise. The exchange, however, did not take place, and at the time of trial defendants had on hand the 10 shares of stock or its equivalent representing plaintiff's purchase. See *Eastman* v. *Kendall*, 256 Mich. 215.

The judgment in favor of defendants is affirmed, with costs.

CLARK, C. J., and MCDONALD, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.