FRIEDMAN *v.* WINSHALL.

1. VENDOR AND PURCHASER—CONDITIONS ATTACHED TO OFFER—AC-
CEPTANCE—LAND CONTRACT.

Conditions precedent to closing of land contract called for in
written offer to purchase, attached to the offer, became a
part of the contract upon acceptance of the offer.

2. SPECIFIC PERFORMANCE—WAIVER OF CONDITIONS.

Purchasers under land contract waived their right to take ad-
vantage of conditions imposed that sewer and water facilities
would be installed by a given date, where they granted an
extension of time as to such installation, hence, they were not
in position in their suit for specific performance to take ad-
vantage of such condition.

3. SAME—TENDER—EVIDENCE.

Finding of trial judge that plaintiff purchasers of lots under
a land contract who seek specific performance thereof were
not in position to make tender of sum required under the con-
tract at time required therein *held,* justified under record
showing it to be undisputed that no tender was made prior
to bringing of suit and the offer in the bill of complaint was
not followed by payment into court of the down payment con-
templated.

4. SAME—DISCRETION OF COURT.

Specific performance is not a remedy of right but rests in the
sound discretion of the court and the granting thereof depends
upon the peculiar circumstances of each case.

5. SAME—EQUITY.

Equitable principles should be applied in a suit for specific
performance and the remedy not be arbitrarily refused.

6. SAME—TENDER.

Tender is not a prerequisite to suit for specific performance of
a land contract, where the vendor has taken the definite posi-
tion that he will not go through with the contract as then a
tender would be merely a gesture and the law does not require
the doing of a useless thing.

7. SAME—TENDER OF DOWN PAYMENT.

Specific performance of contract to sell land was properly denied,

REFERENCES FOR POINTS IN HEADNOTES
[3] 49 Am Jur, Specific Performance §§ 143–145.
[4, 5] 49 Am Jur, Specific Performance §§ 8, 9.
[6] 49 Am Jur, Specific Performance § 144.
[7] 49 Am Jur, Specific Performance § 143.
[8–10] 49 Am Jur. Specific Performance § 42.
[10] 12 Am Jur, Contracts § 311.
[11] 12 Am Jur, Contracts § 252.

where no tender made within time provided was refused by defendant and evidence is insufficient to establish plaintiffs were in a position to make one.

8. CONTRACTS—TIME AS ESSENCE OF AGREEMENT.

Time of closing was of the essence of agreement sought to be specifically enforced, where it appears that an executory land contract was to be executed when water and sewer facilities of the city had been brought to a mentioned street intersection.

9. SAME—EXPRESSION OF TIME AS ESSENCE OF AGREEMENT.

Time may be made of the essence of an agreement either expressly or by any words which show that the intention of the parties is that it shall be of the essence.

10. SAME—TIME AS ESSENCE OF AGREEMENT—EVIDENCE.

That time is of the essence of an agreement may be determined from the contract when read as a whole, from surrounding circumstances indicating haste, or from a new agreement extending the time of performance.

11. SAME—CONSTRUCTION—AMBIGUITY.

Any ambiguity in a contract is resolved against party who prepared the instrument.

Appeal from Macomb; Noe (Alton H.), J. Submitted October 12, 1955. (Docket No. 72, Calendar No. 46,507.) Decided December 1, 1955.

Bill by Eli Friedman, Irving Dworkin and Manuel Dembs, copartners doing business as Crestline Homes, against Jack I. Winshall for specific performance of contract to sell real estate. Bill dismissed. Plaintiffs appeal. Affirmed.

*Shapero & Shapero,* for plaintiffs.

*William Liberson* (*Alan P. Goldstein,* of counsel), for defendant.

CARR, C. J. This is a suit in equity for the specific performance of a written agreement for the sale and purchase of a number of lots in a subdivision situated in the city of St. Clair Shores. Plaintiffs' written offer to purchase was dated March 18, 1954, and was accepted by defendant on March 29th fol-

lowing. Said offer specified a total consideration of $45,500, and provided that a land contract should be executed between the parties at which time the sum of $9,100 was to be paid by plaintiffs. It is conceded that a deposit of $2,000 was made by plaintiffs, for the benefit of defendant, with the broker handling the transaction. Specifications as to other provisions of the land contract, when and if drawn, are not of significant importance in the case.

It was agreed that defendant should furnish a policy of title insurance issued by the Burton Abstract & Title Company, and it appears that said company did execute and deliver a so-called fee-title insurance commitment. Apparently this was considered by the parties to constitute a compliance with their undertaking. A paragraph in the offer with reference to the consummation of the sale was stricken out. Reference was made thereto, however, in a subsequent paragraph which provided, in substance, that the purchasers were to complete the transaction within the time indicated in the stricken paragraph or forfeit the amount of the deposit.

Attached to the offer, and, hence, constituting a part of the contract between the parties, were certain conditions that were specified to be "conditions precedent to the closing of the land contract called for under this agreement." Included therein was the following:

"A. Closing to take place after the sewer and water have been brought to the intersection of Elmira and Greater Mack without any expense to the purchasers with the further proviso that said water and sewer may be tapped in at that point so that water and sewer can be provided for the lots purchased herein. Provided further, that said water and sewer will be available at the intersection of Elmira and Greater Mack within 105 days from the date herein,

and if said water and sewer are not available within said time, this agreement shall be null and void."

It is agreed that the installation by the city of the sewer and water facilities had not, on July 12, 1954, reached the street intersection referred to in the condition quoted. It appears, however, that the broker through whom plaintiffs had submitted their offer to purchase obtained the consent of the purchasers to an extension of time. This was not done at defendant's request, and it was his undisputed claim on the hearing in circuit court that he had no knowledge of it. The record clearly establishes that plaintiffs were satisfied with the progress made in the work of installation of the facilities in question, and waived any right on their part to take advantage of the condition quoted. The situation was such, on the date mentioned, as to leave no doubt that the installation of the facilities would be completed.

During the period between March 29 and July 12, 1954, there was no attempt on the part of the plaintiffs to close the preliminary arrangement, evidenced by the offer and acceptance, by the execution of a land contract. It appears from the record that there was some discussion between plaintiffs and the broker, through whom they made their offer, for the surrender of their rights, for a consideration, under the agreement. The amount first fixed was $2,500, which included the deposit made at the time of the execution of the contract here involved. This was satisfactory to defendant but before such arrangement could be consummated plaintiffs demanded a larger sum, and subsequently increased their demand until it reached $6,500. Testimony on the trial indicated that such offer might have been accepted by defendant, the money paid and the release executed,

but plaintiffs gave notice of withdrawal. It is not denied that such course of conduct on the part of the purchasers irritated the defendant.

Plaintiffs alleged in their bill of complaint that on July 13, 1954, they informed defendant that they were ready to close the deal on the basis of the commitment of title executed by the Burton Abstract & Title Company. How such information was transmitted to defendant, if it was, does not appear. However, on July 15th following, the parties met at the office of the defendant at his request. It is plaintiffs' claim that they desired the execution of the land contract provided for by the agreement of March 29, 1954, but they made no tender of the payment specified in the agreement, either in cash or by certified or cashier's check, and it is undisputed that they did not make such tender on any other date. After some discussion between the parties, defendant stated in substance that he would not sell the lots to plaintiffs but that he would pay them $3,250 for a release of the vendees' rights as specified in the preliminary agreement. The offer was refused, and plaintiffs, on July 20, 1954, filed their bill of complaint requesting specific performance of said agreement. They also filed a notice of *lis pendens*. Defendant answered denying material averments in plaintiffs' pleading and their right to the relief sought.

Based on the proofs taken in open court the trial judge concluded that there was no default on the part of the defendant, that the plaintiffs had not made tender of the amount of the payment required of them to constitute performance on their part, that they did not have the money to do so, and that such tender was required by the contract as a prerequisite to suit. In his opinion he directed attention also to the fact that plaintiffs had sought the return of their deposit plus an additional amount, suggesting that such action in effect constituted an attempted new

arrangement and an effort to avoid responsibility under the contract which they asked in their suit to have specifically enforced. Based on his findings the judge came to the conclusion that they were not entitled to the relief sought. In accordance with such findings a decree was entered dismissing the bill of complaint, setting aside the *lis pendens* that had been filed by plaintiffs in the cause, and denying recovery of the deposit paid defendant. Plaintiffs have appealed from such decree, claiming that the trial court was in error in holding that a tender was required prior to bringing the suit and that an offer in the bill of complaint with reference to carrying out the contract between the parties, and making such payments as might be necessary to consummate the agreement, was insufficient.

On the hearing before the circuit judge, plaintiff Friedman, following claims by him that he and his associates might have made tender by cash or cashier's check on July 15th, stated in response to questions that he did not know whether their account at their bank was sufficient to permit such act. Plaintiff Dworkin, without specific reference to the bank account, claimed that the money necessary for the tender could have been raised. No explanation was offered as to the source from which the money might have been obtained or as to the ability of the purchasers to obtain it. The evidence fully justified the trial judge in concluding that plaintiffs were not in position to make tender on July 15, 1954, and that their conduct with reference to releasing their vendees' rights under the contract for a consideration suggested a desire to be relieved from their obligations under the purchase agreement that they had made. In any event it is undisputed that no tender was made prior to the bringing of this suit, and that the offer set forth in the bill of complaint was not followed by the payment into court of the amount

of the down payment under the land contract contemplated by the parties when they made the initial arrangement.

Counsel for appellants in their brief assert that the relief sought by them should be granted as a "matter of right" under the facts disclosed by the record. This Court has repeatedly stated in prior decisions that specific performance is not a remedy of right but rests in the sound discretion of the court. *St. Pierre* v. *Masson,* 243 Mich 60, and cases there cited. In *Rex Oil & Gas Company* v. *Busk,* 335 Mich 368, 374, in upholding the action of the circuit court in refusing the remedy sought, it was said:

"Specific performance is a matter of grace and not of right. The granting of this remedy depends upon the peculiar circumstances of each case. *Marvin* v. *Solventol Chemical Products, Inc.,* 298 Mich 296, and authorities therein cited at page 299."

The foregoing statement was quoted with approval in *First Baptist Church of Dearborn* v. *Solner,* 341 Mich 209, 216. Conceding that equitable principles should be applied in each case, and that the remedy may not be arbitrarily refused, we think it must be said in the case at bar that the factual conclusions of the trial judge were fully justified by the proofs and that his action in denying the relief sought was, under the circumstances, not erroneous. Each case of this character must be determined on the bases of the factual situation existing and applicable principles of equity.

Appellants further assert that they were not required to make tender prior to bringing the suit, and that the offer in the bill of complaint was sufficient. This Court has held that tender prior to bringing suit for specific performance of a contract is not required if the party against whom the relief is sought has taken the definite position that he will not

go through with such contract. In such a case a tender would be merely a gesture and the law does not require the doing of a useless thing. *Weinburgh* v. *Saier*, 303 Mich 640; *Berrien County Fruit Exchange, Inc.*, v. *Pallas*, 314 Mich 66; *Hanesworth* v. *Hendrickson*, 320 Mich 577. Likewise, prior tender is excused for obvious practical reasons if one who has agreed to sell land finds that he is not the owner of all the property to be conveyed and the purchaser is willing to accept the portion to which the seller has title, subject to an adjustment of the agreed purchase price. *Borkowski* v. *Kolodziejski*, 332 Mich 589.

In the case at bar we find nothing in the record to justify a conclusion that defendant, within the period for performance of the contract between the parties, said or did anything to indicate that he would decline to accept a proper tender by plaintiffs. His statement that he would not convey the lots to them was made after the expiration of the time fixed for performance and when the situation was such as to raise doubts as to plaintiffs' ability to make the required initial payment under the proposed land contract. It is significant also that on the occasion in question, the meeting of the parties on July 15, 1954, no tender was actually made, although it seems to be the claim of the plaintiffs that it was their purpose at the time to close the preliminary arrangement. Neither are we confronted by a situation in which a party agreeing to sell certain described property is unable to comply as to a portion of it. It appears from the record in this case that the parties stipulated with reference to the matter. No issue of such nature was presented on the hearing by either the pleadings or the proofs. The trial court was justified in assuming that defendant's ability to perform his contract prior to default by the plaintiffs was not in issue.

In *Kaiser* v. *Weber,* 301 Mich 609, plaintiff brought suit for specific performance of a land contract. No formal tender was made to defendants or their attorney, but plaintiff claimed on appeal that she was ready and willing to pay defendants the amount owing to them. In affirming a decree denying the relief sought, it was said (p 616):

"We do not find in the record an express refusal by defendants or by their attorney to accept a proper legal tender of the amount necessary to redeem. We can hardly infer such refusal from the statement by defendants' attorney that he believed the statute providing for a 90-day period of redemption was unconstitutional.

"The circuit judge was correct in his conclusion that plaintiff made no proper legal tender. *Leonard* v. *Woodruff,* 259 Mich 434; *Niederhauser* v. *Detroit Citizens Street Railway Co.,* 131 Mich 550. In the *Leonard Case* we said (p 438): 'A tender, to be effective, must be without qualification or condition.'

"Plaintiff's offer to redeem, without proper tender of the amount due, did not accomplish the purpose of a tender or entitle plaintiff to the relief sought."

The foregoing statement is applicable to the situation in the instant case. As found by the trial judge, plaintiffs did not make a tender and the evidence is insufficient to establish that they were in position to do so. The offer contained in their bill of complaint was not sufficient. Furthermore, it came too late.

Plaintiffs insist that time of performance was not of the essence of the contract. However, the condition of the agreement, hereinbefore quoted, clearly contemplated that the transaction should be closed by the execution of an executory land contract when the water and sewer facilities of the city had been brought to the intersection of the streets mentioned, and this was followed by the proviso that if such condition was not met within the period of 105 days

the agreement should be null and void. This language clearly implies that the parties when they executed their contract intended that the time of closing should be of the essence of the agreement. Furthermore, as hereinbefore noted, the plaintiffs consented to an extension of time, presumably on the theory that they considered the broker's request therefor to be a reasonable one.

In 12 Am Jur, Contracts, § 311, p 866, it is said:

"Since it is settled both at law and in equity that the parties may make time of the essence, even where damages may compensate for the delay, it is clear that they may do so by an express declaration that 'time is of the essence.' An examination of the cases will show, however, that those words are not essential. Any words which show that the intention of the parties is that time shall be of the essence of the contract or any clause which provides in unequivocal terms that if the fulfilment is not within a specified time the contract is to be void will have that effect.

"The rule as to when the facts and circumstances, the nature of the subject matter of the contract, or the character of the interest bargained for make time of the essence cannot be stated in any general way. In the determination of the question whether time is of the essence, the general rules of interpretation are applied. Accordingly, the entire agreement is considered, together with the circumstances and purposes of the parties and the subject matter. Where the contract is created by telegraph and the surrounding circumstances evidence haste, a time stipulated therein is of the essence.

"A new agreement extending the time of performance is evidence that the parties considered time as of the essence."

The foregoing statement was approved in *Grade* v. *Loafman,* 314 Mich 364, 368. The general principles applicable in a case of this nature were also considered in *MacGlashan* v. *Harper,* 299 Mich 662; and

*Czeizler* v. *Radke,* 309 Mich 349. Any ambiguity in the preliminary contract made by the parties, whether resulting from striking out paragraph 7 of the offer, as hereinbefore mentioned, or from the language used, must be resolved against the plaintiffs. That they prepared the instrument executed by the parties is not in dispute. The rule of construction therefore falls within the scope of the decisions in *Saxon* v. *Howey,* 247 Mich 508; and *L. A. Walden & Co.* v. *Consolidated Underwriters,* 316 Mich 341.

We conclude that the trial court correctly determined the material facts involved in the controversy and applied the proper principles in disposing of the case. The decree is affirmed, with costs to defendant.

BUTZEL, SMITH, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.