STERLING *v.* FISHER.

1. APPEAL AND ERROR—SPECIFIC PERFORMANCE—DE NOVO HEARING.

An appeal from decree denying plaintiff relief he sought in suit for specific performance of part of a land contract is heard *de novo* on the record, but considerable importance is given to the findings of the trial court.

2. SPECIFIC PERFORMANCE—LAND CONTRACTS—TENDER OF PERFORMANCE.

Finding of trial court in suit for specific performance of part of land contract that plaintiff had not made a legal tender of performance is not disturbed under record presented, plaintiff having made, at most, offer to pay for 1 of the lots provided defendant released him from any obligation as to remaining lots under the contract, a conditional offer which defendant was under no duty to accept.

Appeal from Wayne; Baum (Victor J.), J. Submitted April 8, 1959. (Docket No. 18, Calendar No. 47,562.) Decided July 13, 1959.

Bill by Max Sterling against Alvin Fisher and Beverly Fisher for specific performance of one provision in a land contract. Bill dismissed. Plaintiff appeals. Affirmed.

*Morris Lipshy* (*Max Chomsky,* of counsel), for plaintiff.

*S. Lawrence Stein,* for defendants.

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 815.
[2] 49 Am Jur, Specific Performance § 143 *et seq.*

VOELKER, J. This appeal is from the trial chancellor's refusal to grant partial specific performance of a land contract. On November 1, 1955 the plaintiff, Max Sterling, a building contractor, purchased 30 lots from the defendant, Alvin Fisher, a real-estate broker, on a 1-year land contract. (Mr. Fisher's wife, Beverly Fisher, joined in the sale and is joined as a party defendant, but Alvin Fisher is the real party in interest and will be referred to in the singular.)

After a year had elapsed and the conditions of the contract had not been fulfilled the defendant served notice of forfeiture and subsequently began summary proceedings in the court of the circuit court commissioner. One day before that cause was to be heard by the commissioner the appellant filed a bill of complaint in chancery praying that the proceedings before the circuit court commissioner be enjoined and that he be granted specific performance of a portion of the land contract. The chancellor denied plaintiff's prayer for relief and he has appealed.

Appellant sets out the following as questions on appeal:

"1. Should a land contract prepared by the vendor that is ambiguous as to payment of interest on released lots and as to time in which lots can be released be strictly construed against the vendor?

"2. Was a proper tender made to secure the release of lot 329?

"3. Can there be a proper forfeiture of a land contract after tender has been made?

"4. Can plaintiff have specific performance of provisions of release clause when nothing further was paid on land contract?

"5. Is there mutuality of remedy under the land contract to enable a court to decree specific performance of the release clause?"

The relevant portions of the contract in question are as follows:

"1. The seller agrees as follows:   *   *   *

"(b) That the consideration for the sale of the above described premises to the purchaser is: $26,-511, of which the sum of $5,511 has heretofore been paid to the seller, the receipt of which is hereby acknowledged, and the balance of $21,000 is to be paid to the seller, with interest on any part thereof at any time unpaid at the rate of 6% per annum while the purchaser is not in default, and at the rate of 7% per annum when and as often as the purchaser is in default. Provided, the entire purchase money and interest shall be fully paid within 1 year from the date hereof, anything to the contrary notwithstanding.   *   *   *

"2. The purchaser agrees as follows:   *   *   *

"(d) To pay all taxes and assessments hereafter levied on said premises before any penalty for nonpayment attaches thereto,   *   *   *

"3. The seller and purchaser mutually agree as follows:   *   *   *

"(k) Any declarations, notices or papers necessary or proper to terminate, accelerate or enforce this contract shall be presumed conclusively to have been served upon the purchaser if such instrument is enclosed in an envelope with postage fully prepaid, if said envelope is addressed to the purchaser at the address set forth in the heading of this contract or at the latest other address which may have been specified by the purchaser and receipted for in writing by the seller, and if said envelope is deposited in a United States post office box.

"(1) At any time within the limits of the land contract the sellers will convey by warranty deed any lot as specified by the purchaser upon payment of $700 per lot plus interest until the entire principal balance is paid."

Turning first to the fact question, "Was a proper tender made to secure the release of lot 329?" The

undisputed facts in this case are as follows: The 1-year land contract was signed November 1, 1955. Shortly thereafter plaintiff began construction of a house on lot 329. That house was to be used by the defendant Alvin Fisher as a display model to help sell other houses. Plaintiff's construction activities ceased before the house was completed and the defendant inquired several times as to why construction had stopped. In late August or September of 1956 defendant met with the plaintiff and questioned him regarding his plans for the property because the due date for payment of the purchase price and interest was approaching and the taxes on the property were already past due. Plaintiff refused to pay the taxes and explained that he was not progressing with construction because he had had some troubles with the veterans administration and with mortgage financing. Thereafter the defendant himself paid the overdue taxes.

There was a meeting of the parties on November 1, 1956 (the day the land contract fell due). What took place at that meeting is in dispute and will be discussed presently. On November 2, 1956 the defendant by regular mail sent a notice of forfeiture to the plaintiff (who claimed and testified that he never received any such notice), and subsequently defendant began summary proceedings before the circuit court commissioner. There was still another meeting of the parties on November 8, 1956.

The chancellor in his lucid opinion discusses the disputed facts as follows:

"Upon hearing the testimony in this case, it is clear that the plaintiff is an experienced builder, thoroughly conversant with land contracts. His demeanor on the witness stand made a distinctly poor impression. He was cunning, evasive and appeared to have a rather convenient memory. His version and that of the defendant as to what hap-

pened on November 1, 1956 are at odds. He maintains that on November 1, 1956, he had a meeting with the defendant. That at this meeting one Beryle Walters was present. Beryle Walters was at that time and continues to be an attorney admitted to practice in this State, a fact which may be judicially noticed from the records of this court.

"The plaintiff contends that on November 1, 1956, he had in his possession an ordinary check in the amount of $700 payable to the defendant, and sufficient cash to pay interest and taxes due. He contends that he displayed this check and offered by it to pay the $700 called for in the release clause. He claims that he further offered to pay the interest and taxes due on this lot and insisted on receiving a conveyance of it.

"The defendant maintains that the plaintiff made no unconditional offer on November 1st to pay any amount; that he did not on this date display the check or offer cash. The defendant's testimony is that the plaintiff, in company with Mr. Walters, simply discussed an adjustment of the mutual affairs of the plaintiff and defendant and offered to pay for 1 lot only on condition that he would be released from any obligation with respect to the rest of the lots. The defendant testified that the plaintiff offered to execute a quit-claim deed of his vendee's interest in the remaining lots if the defendant would absolve the plaintiff of any obligation to pay for them and would deed over the 1 lot in return for the release price.

"I must note that the only testimony we have as to the events of November 1, 1956, comes from interested parties. The testimony of Mr. Walters was not offered. Although the plaintiff maintains Mr. Walters did not represent him as an attorney at this meeting, he does testify that Mr. Walters was present at his request. The testimony also shows beyond peradventure that Mr. Walters examined the title to the land in question prior to the time that the land contract was entered into, which

is a service customarily performed for the benefit of the purchaser. The testimony further shows that at the time the land contract was entered into, November 1st of 1955, Mr. Walters was present at the closing at the behest of the plaintiff. The failure of Mr. Walters to appear as a witness for the plaintiff regarding events of November 1, 1956, and the absence of any explanation of his nonappearance does not reflect favorably on the plaintiff's position.

"In examining closely the events of November 1, 1956, I am convinced that the defendant's version more correctly states what happened than the version of the plaintiff. I am satisfied that on the day the plaintiff asked to be released from his obligations under the contract, except for the 1 lot on which he had commenced construction. He did indicate at that time a willingness to pay $700 and interest at the rate of 6% per year on $700. I do not believe he displayed any check or offered to deliver any check to the defendant. I am satisfied, also, that the plaintiff's offer to pay this amount was conditioned on the defendant releasing him from any obligation with respect to the remaining lots under the contract. It should be noted that on November 1, 1956, the entire purchase price was due, together with interest thereon and taxes. The defendant was under no duty to accept the conditional offer of the plaintiff. There was no legal tender of performance by the plaintiff on November 1, 1956."

This being an appeal from a chancery court we hear it *de novo* on the record, and we must necessarily give considerable import to the findings of the trial court, failing to follow them only when we are convinced that we would have found differently had we been in his place at the time of the original hearing. From our study of briefs and records we find nothing to suggest that the chancellor erred in his determination of the facts or that he in any way abused his necessarily broad discretion.

Having thus accepted the chancellor's findings that there was no legal tender of performance by the plaintiff on or before the due date of the contract, there would be little point in discussing the other questions presented by the appellant, since if all that he alleges were true (which we do not decide), if he still failed without sufficient legal justification to make a legal tender of performance before the due date of the contract, he was in default and thus was not entitled to specific performance. See, generally, *McClure* v. *Meyer Corporation*, 254 Mich 686 and *Walters* v. *Durbin*, 276 Mich 580.

The decree of the trial court is affirmed, with costs to appellee.

Dethmers, C. J., and Carr, Kelly, Smith, Black, Edwards, and Kavanagh, JJ., concurred.