NEDELMAN *v.* MEININGER

1. Vendor and Purchaser—Contracts—Performance—Time of the Essence—Evidence—Real Property.
    Time for performance was of the essence of the parties' agreement for the sale of land where they not only had agreed that plaintiffs were specifically required to complete their purchase within ten days after title commitment was furnished and that defendants, in event of plaintiffs' default, had the right to declare a forfeiture or to enforce the terms, but also the parties had concluded a new agreement extending the time of performance which in itself was evidence that they considered time as of the essence.

2. Vendor and Purchaser—Contracts—Real Property—Offer to Close—Tender—Specific Performance.
    An offer to close a land sale is not a legal tender of performance of a contract for the sale of land; consequently, where plaintiffs continually offered to close but did not accompany their offer with the necessary cash to constitute tender, defendant vendors were entitled to declare a forfeiture of the deposit, and the trial court did not err in denying plaintiffs specific performance.

3. Vendor and Purchaser—Contracts—Performance—Time of the Essence—Evidence—Real Property.
    Time was of the essence as a matter of fact, if not of law, in the parties' contract for the sale of land and where the evidence showed that plaintiffs were required to complete their purchase within a specified time after title commitment had been furnished, that time for their performance had been extended by agreement, that they continually offered to close

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 55 Am Jur, Vendor and Purchaser § 111 *et seq.*
[2] 55 Am Jur, Vendor and Purchaser § 342.
[4] 55 Am Jur, Vendor and Purchaser §§ 109, 110.

without ever tendering payment, and that defendants declared a forfeiture of their deposit only after time for performance had expired, the trial court properly denied plaintiffs specific performance.

4. VENDOR   AND   PURCHASER—CONTRACTS—PERFORMANCE—REASONABLE TIME.

Plaintiffs' performance of their offer to purchase defendants' land was required within a reasonable time, assuming that time for performance was not of the essence, and where a reasonable time for their performance did not extend beyond defendants' date of notice of forfeiture for nonperformance the trial court properly denied plaintiffs specific performance.

Appeal from Oakland, Farrell E. Roberts, J. Submitted Division 2 January 7, 1970, at Lansing. (Docket No. 6,863.)   Decided May 27, 1970.

Complaint by Lawrence M. Nedelman and John Stark against Harold A. Meininger and Lucille B. Meininger for specific performance of an agreement for the sale of land. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Nedelman & August,* for plaintiffs.

*Maurice A. Merritt,* for defendants.

Before: LEVIN, P. J., and HOLBROOK and BRONSON, JJ.

HOLBROOK, J. Plaintiffs brought this action in the Oakland County Circuit Court seeking specific performance of an agreement of sale of land located at the northeast corner of 12 Mile Road and Hope Street in the City of Southfield, Oakland County, Michigan. Plaintiffs appeal from the decision and judgment of no cause of action for defendants, entered by the trial court judge, the Honorable Farrell E. Roberts.

On July 7, 1967, plaintiff John Stark, individually, executed a written offer to purchase the realty in question and submitted the offer, together with a $500 deposit, to defendants. Defendants rejected plaintiff Stark's written offer but retained the $500 deposit pending the proffer of another offer. That offer, dated August 29, 1967, was drafted by the office of defendant Meininger, a real estate broker who was co-owner, with his wife, of the property in question, and was submitted by defendants to plaintiff Stark who, in turn, delivered the offer to plaintiff Nedelman. Upon receipt of the offer, Nedelman signed his own name as purchaser and, with Stark's permission, also signed, as purchaser, "John Stark, per L. Nedelman." It appears that Mr. Nedelman, an attorney, represented Mr. Stark.

The signed offer was forwarded by mail to defendant's office. Plaintiff Stark's personal signature was procured on September 1, 1967. The offer was accepted by defendants, after the parties amended the agreement to provide for consummation of sale within 10 days after delivery of the title commitment, rather than 30 days, which the agreement originally provided. Title commitment, dated September 11, 1967 was delivered to plaintiff Stark on or about that date by defendant's salesman, Lawrence Kempel.

The offer and acceptance provided in part as follows:

"1. The undersigned purchaser hereby offers and agrees to purchase the premises * * * and to pay therefor the sum of Nine Thousand and 00/100 ($9,000) Dollars upon the following terms and conditions.

* * *

"3. The sale is to be consummated by: *The delivery of the usual Warranty Deed conveying an unencumbered marketable title subject to* the re-

strictions of record upon the use of the premises, usual public easements and zoning ordinances if any, and *the payment of all of the purchase money in cash or certified check.*

"4. If title can be conveyed in the condition required herein, the sale shall be consummated within 10 days after delivery of abstract or policy of title insurance, or commitment therefor, at the office of Harold A. Meininger, Realtor.

\*   \*   \*

"8. \*   \*   \* If this offer is accepted, in writing, *the purchaser agrees to complete the purchase of said property within the time provided herein. In the event of default by the purchaser hereunder, the seller may, at his option, elect to enforce the terms hereof or declare a forfeiture hereunder and retain the deposit as liquidated damages.*" (Emphasis supplied.)

Copies of the closing statement and proposed deed were sent to plaintiff Stark, under cover letter dated September 18, 1967. That letter stated in part:

"Your agreement specifies consummating this sale by September 21, 1967, which is 10 days after delivery of title insurance covering said lot.

"Please advise me before September 21 as to a definite appointment convenient to you."

Plaintiff Nedelman testified that he received the closing papers from Stark on September 20, 1967, the day prior to the proposed closing on September 21, 1967. Plaintiff Nedelman phoned defendant's office and objected to the short time for closing, and requested of defendant's secretary that he and his wife be designated on the documents as co-purchasers along with the Starks. Testimony disclosed that this was the first indication received by defendant's office to the effect that plaintiff Nedelman and his wife were to be co-purchasers. Defendant's secretary testified that she informed Nedelman,

upon learning of his interest in the transaction, that it would be necessary for plaintiff Stark to sign an assignment of his interest in the purchase over to all the parties who desired to be named as grantees, to which plaintiff Nedelman allegedly agreed. Defendant Meininger testified that the assignment was prepared pursuant to the request of Nedelman for the change of names on the documents. Meininger also testified that, without execution of the assignment,* he would not convey the real estate to the parties as requested.

Subsequent to plaintiff Nedelman's request to Mr. Kempel for an extension of time and a new closing date, a new closing date was agreed upon and scheduled for 4 p.m. on September 26, 1967, in defendant's office. A new closing statement, new proposed deed and the aforementioned proposed assignment were thereupon sent to plaintiff Nedelman and received by him prior to September 26, 1967. The record fails to disclose that the assignment was ever executed. Plaintiff Nedelman communicated with Mr. Kempel, objecting to the fact that his name did not appear on the title insurance commitment along with plaintiff Stark's; that adjustments in the closing statement were based on the September 21 date rather than the newly-agreed-upon closing date of September 26, 1967; and that the proposed assignment required that half interest in the property be assigned to Nedelman and his wife. It was this latter requirement which plaintiffs contend was an arbitrary and unlawful condition precedent to closing. However,

---

* "For one dollar and other valuable considerations I hereby assign, give and transfer to John Stark and Aranka Stark, his wife, and Lawrence M. Nedelman and Anna Nedelman, his wife, interest I may have in a certain preliminary agreement to purchase described as follows:

"Dated—August 29, 1967.

"Accepted—September 5, 1967.

"Legal—Lot 33 Supervisor's Plat #22 executed between John Stark and Harold A. Meininger."

plaintiffs cite no relevant authority for this contention, nor do they show that the proposed deed to the Starks and the Nedelmans is not in conformity with the assignment.

It appears from plaintiff Nedelman's testimony that on September 26, 1967, the date set for closing, he telephoned defendant's office in the morning, spoke to defendant's secretary, and *requested an adjournment to October 2, 1967 in order that he might get interest on his money in the bank,* and was informed that she would relay the message to Mr. Kempel. Nedelman testified that he again called defendant's office in the early afternoon, again repeating his request for a delayed closing to defendant's secretary, and that she stated that the request would be relayed to Mr. Kempel and to defendant Meininger. The secretary testified that while she could not remember receiving a call from plaintiff Nedelman on September 26, a call from Nedelman had come into the office for Mr. Kempel and was received by one of the salesmen. She, in turn, called plaintiff Nedelman at approximately 2 p.m., because, as she testified, "when Mr. Meininger and Mr. Kempel are out or expect to be out most of the day, I try to see if there's anything I can do for the people that have called in, and sometimes I call the people back to say that they might not be in the office for a while or things like that."

Mr. Kempel testified that he returned to defendant's office at approximately 3 p.m. after having been away for a good portion of the day, and that upon learning of plaintiff Nedelman's telephone call, and after speaking with defendant Meininger, who felt the reason given for plaintiff's requested change of closing date was not sufficient, proceeded to telephone plaintiff Stark. Kempel told Stark by telephone to be at the closing set for 4 p.m., to which

Stark replied that he would like the closing changed because *plaintiff Nedelman was sick* and could not make the closing. Plaintiff Stark *admitted, upon questioning, that he told defendant's office that Nedelman was ill, and for that reason, he wished to have the closing on another date,* and Nedelman *admitted that he requested the October 2nd closing so he could collect interest to October 1st.*

The testimony revealed that plaintiff Nedelman subsequently received a telephone call from plaintiff Stark at approximately 3:45 p.m. on September 26, informing him that defendants insisted upon a 4 p.m. closing which, as plaintiff Nedelman testified, would have been impossible for him to meet. Defendant Meininger and his agent Kempel were at the designated closing office until 5:30 that afternoon. Plaintiffs failed to appear at the defendant's office for closing on September 26, 1967.

Nedelman signed on September 27, 1967, and recorded on September 28, 1967, an affidavit stating that he and plaintiff Stark were proposed co-purchasers of the realty in question. This was done, as Nedelman testified, for the purpose of protecting their interests in the property and to prevent the same from being sold by defendants at an increased value.

On September 27, 1967, defendants sent a letter to plaintiff Stark which stated:

"This is your notification that the sellers as shown on the agreement to purchase lot 33 Supervisors Plat #22, City of Southfield, Oakland County, Michigan, signed by you as purchaser and receipted by you on September 5, 1967, at said sellers option shall retain the deposit as shown or shall take action to consummate the sale as set forth in said purchase agreement."

The above letter was received by Nedelman from Stark.

On September 28, 1967, plaintiff Nedelman sent a certified letter to defendant Meininger which stated in part:

"I am ready to close this transaction at a time both reasonable to the seller and myself. I strongly urge you to contact the writer for an appointment time."

The next communication between the parties was on October 13, 1967, when defendant sent a letter to plaintiff Stark, with a copy to plaintiff Nedelman which, briefly summarizing the events leading to the present action by plaintiffs, stated in part as follows:

"Therefore, the undersigned treats your failure to close on or by the agreed upon date as a default on your part, and elects to declare a forfeiture by you of said offer and acceptance to purchase, and will retain said deposit as liquidated damages, according to the provisions and conditions of said offer and acceptance."

Also in the same letter it is represented that Nedelman was interested in the purchase of the land, before his alleged purchase from Stark of a part of the offer of purchase, *viz.*:

"Although a written offer of one Lawrence Nedelman, dated August 29, 1967, for the same land, was received in my office on or about that date, it was not accepted because of terms specified and also no consideration was tendered with it."

Plaintiffs' attorney, on October 17, 1967, wrote defendant, reciting that plaintiffs "are ready, willing and able to conclude the purchase of the aforesaid lot pursuant to the agreement of the parties. The principals were ready, willing and able to conclude the transaction on September 26, 1967".

Plaintiffs raise several questions on this appeal. We restate the two issues to be determined on this appeal as follows:

1. *Was the offer to purchase and acceptance properly construed by the trial court as requiring payment for the property strictly in accord with its terms, i.e., was time of the essence?*

2. *Did plaintiffs' failure to tender performance prior to defendants' election to declare a forfeiture on October 13, 1967, bar specific performance of the contract in question, irrespective of whether time was of the essence of the contract?*

Both of these issues can be and will be considered together.

Appeals in chancery are reviewed *de novo,* and we do not generally reverse or modify unless convinced that we would have had to reach another result had we occupied the position of the trial court. *Wells* v. *Wells* (1951), 330 Mich 448; *Socha* v. *Socha* (1966), 5 Mich App 404; and *Georges* v. *Ballard* (1969), 20 Mich App 554.

It is undisputed that plaintiffs did not tender performance by paying to defendants the balance of the purchase price specified in the agreement of sale of August 29, 1967, on the agreed new closing date, September 26, 1967, nor at any time thereafter. Plaintiffs contend that tender of performance was rendered unnecessary by defendants' insistence that plaintiffs close at the agreed-upon time on September 26, 1967, and by defendants' notification to plaintiffs on October 13, 1967, of their election to declare a forfeiture, and that tender would, under the circumstances then existing, have been a useless gesture, citing *Weinburgh* v. *Saier* (1942), 303 Mich 640; *Hanesworth* v. *Hendrickson* (1948), 320 Mich 577; and *Friedman* v. *Winshall* (1955), 343 Mich 647.

The record does not disclose that defendants would have refused a tender prior to declaration of forfeiture, October 13, 1967, of the sum payable by plaintiffs under the instrument in question. The *Weinburgh* and *Hanesworth* cases, *supra,* are not authority for plaintiffs since in those cases the Supreme Court agreed with the trial courts' findings that proper tender, if made, would have been refused by the vendors.

Defendants' notification to plaintiff Stark, on September 27, 1967, the day following the scheduled closing, that they would, at their option, retain the deposit or take steps to consummate the sale as set forth in the purchase agreement, was evidence that defendants, even beyond the closing date of the contract and until forfeiture was declared, had not elected to refuse a tender by plaintiffs. This notification was received by plaintiff Nedelman from plaintiff Stark. Plaintiffs do not contend that any proper objections they may have had to the closing papers as prepared could not have been corrected at the closing.

Under the circumstances here presented, the case of *Friedman* v. *Winshall, supra,* is applicable. There our Supreme Court stated the following, regarding the necessity of tender of performance, p 651:

"It is plaintiffs' claim that they desired the execution of the land contract provided for by the agreement of March 29, 1954, but they made no tender of the payment specified in the agreement, either in cash or by certified or cashier's check, and it is undisputed that they did not make such tender on any other date. * * *

"Based on the proofs taken in open court the trial judge concluded that there was no default on the part of the defendant, that the plaintiffs had not made tender of the amount of the payment required of them to constitute performance on their part."

See also, *Pappas* v. *Harrah* (1922), 221 Mich 460; *Grade* v. *Loafman* (1946), 314 Mich 364; and *Sterling* v. *Fisher* (1959), 356 Mich 634; Callaghan's Michigan Civil Jurisprudence, Vendors & Purchasers, § 55, pp 55, 56.

It is the contention of plaintiffs that time for performance was not of the essence of the agreement.

Defendants assert that the record shows that the parties considered time as of the essence of the contract, and cite the case of *Friedman* v. *Winshall, supra,* at p 656 and 17 Am Jur 2d, Contracts, § 333, p 772.

Further light on the subject is obtained from the case of *Grade* v. *Loafman, supra,* p 368 wherein 12 Am Jur, Contracts, § 311, p 866, is cited with approval, for the rule: "A new agreement extending the time of performance is evidence that the parties considered time as of the essence".

In equity, time is generally not regarded as of the essence of a contract unless the contract so states; or it clearly appears that the parties intended time to be an essential element of their agreement; or unless, from the nature of the contract and surrounding circumstances, such intent must necessarily be implied. See 17A CJS, Contracts, § 504(1), pp 789, 790. Where it is the clear intent of the parties to make time of the essence, the stipulation as to time must be observed, whether such be specified in terms of a particular hour or day. See 17A CJS, Contracts § 502(1), p 765; 17 Am Jur 2d, Contracts, § 332, pp 769, 770. In the offer to purchase and acceptance the plaintiffs were specifically required to complete the purchase within ten days after title commitment was furnished, and provided that default gave the right to defendants to declare a forfeiture or enforce its terms.

Plaintiffs contend that, while no tender of performance was made, they did offer to close on October 2, 1967, and that was sufficient. Plaintiffs confuse the issue by so claiming because *an offer to close is not a legal tender*. Plaintiffs continually offered to close but they did not accompany their offer to close with the necessary cash to constitute tender. Plaintiffs cite *Elbom* v. *Pavsner* (1923), 225 Mich 213, 218, as authority for their position; however, this case is distinguishable from the instant case. In *Elbom*, plaintiffs, as prospective purchasers, met their agreed closing appointment "having with them sufficient certified checks and other bank paper for that purpose  *  *  *  but defendants did not appear."

We rule that the trial court did not abuse its discretion in failing to hold that defendants "lulled the plaintiffs into a sense of security and then made the possibility of performance impossible by the plaintiffs", as they alleged in their complaint. The Nedelman purchase of a part of the offer to purchase from Mr. Stark complicated the consummation of the transaction but did not change, enlarge, or extend the rights of the purchasers, nor diminish their obligations.

The trial court, finding that time was of the essence of the contract, stated in its opinion in part the following:

"*  *  *  The agreement of sale had provided for closing within ten days of delivery of the title commitment which had been dated September 11, 1967. Testimony was vague as to the exact date of delivery of the title commitment, but it had apparently run, if not by September 21, within a day or two after this date.

"Time is of the essence in the agreement of sale and remained so when defendants agreed to postpone to a day certain, September 26. On this date

plaintiff Nedelman sought an adjournment to October 2, 1967. Plaintiff Nedelman claims to have been misled because he was not able to get an answer to his request until 3:45 p.m. This answer being no, what then was plaintiff Nedelman under a duty to do? He could not reach the closing by 4 p.m. At this time it became his duty to get there as soon thereafter as reasonably possible and to notify defendants to this effect. Five p.m. would seem to have been a reasonable time. It is the finding of this court that forfeiture occurred on the 26th of September. * * * "

Although we would not have ruled, as the trial judge did, that time was of the essence in the contract as a matter of law, we do determine on this *de novo* review that time was of the essence in this contract as a matter of fact. The language in the instrument and the conduct of the parties surrounding that transaction, including the failure of plaintiffs to tender payment prior to declaration of forfeiture, were sufficient for the trial court to deny specific performance.

*Arguendo,* even assuming that time was not of the essence in the performance of this offer to purchase, performance was required in a reasonable time, and we rule that a reasonable time for performance did not extend beyond the date of notice of forfeiture by defendants, October 13, 1967.

Specific performance is a remedy of grace and not of right, resting within the sound discretion of the court, the granting of which depends upon the peculiar circumstances of each case. *St. Pierre* v. *Masson* (1928), 243 Mich 60; *Marvin* v. *Solventol Chemical Products, Inc.* (1941), 298 Mich 296; *Rex Oil & Gas Company* v. *Busk* (1953), 335 Mich 368; *First Baptist Church of Dearborn* v. *Solner* (1954), 341 Mich 209; *Star Realty, Inc.* v. *Bower* (1969), 17 Mich App 248. The trial court under the facts

present in this case did not commit error in refusing such discretionary relief.

Affirmed.   Costs to defendants.

Judge LEVIN concurs in this opinion, adding that he wishes to avoid any implication that we review equity cases by a different standard than other cases tried by a judge without a jury (see *People* v. *Hummel* [1969], 19 Mich App 266) or that time was so far of the essence that a short delay in tendering performance would necessarily have justified defendants forfeiting the deposit or in refusing themselves to perform the agreement.