**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0364n.06

**No. 10-1013**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MIDDLEBELT PLYMOUTH VENTURE, LLC, | ) ) | |
| Plaintiff-Appellant, | ) ) | **FILED** |
| | ) | ***May 27, 2011*** |
| v. | ) ) | LEONARD GREEN, Clerk |
| | ) | ON APPEAL FROM THE UNITED |
| MOE'S SOUTHWEST GRILL, LLC; THE | ) | STATES DISTRICT COURT FOR THE |
| S & Q RIB SHACK, LLC; and RAVING | ) | EASTERN DISTRICT OF MICHIGAN |
| BRANDS HOLDINGS, INC., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before:  SUTTON and STRANCH, Circuit Judges; WELLS, District Judge.[*]

SUTTON, Circuit Judge.  At stake in this landlord-tenant dispute is a consent decree that purported to go into effect when the tenants failed to make timely installment payments required by a settlement agreement between them.  The district court declined to enter the consent judgment, holding that the tenants substantially complied with the agreement.  Because the agreement made time of the essence and because the district court did not find that the tenants cured within the ten days provided by the agreement, we vacate the judgment and remand the case to the district court to consider other defenses implicated by this dispute.

---

[*]The Honorable Lesley B. Wells, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

I.

Middlebelt Plymouth Venture owns a shopping center in Livonia, Michigan, and leased part of the property to Moe's Southwest Grill, S & Q Rib Shack and Raving Brands. When the tenants backed out of the lease, Middlebelt sued them in federal court for anticipatory breach of the contract, seeking $476,915 plus attorney's fees.

The parties settled, and the district court dismissed the case with prejudice but retained jurisdiction to enforce the settlement agreement. The agreement required the tenants to pay Middlebelt $300,000 over thirteen monthly installments. If the tenants failed to make a payment on time, the agreement provided that Middlebelt would give them written notice and would give them ten days to cure the missing payment. After ten days, if the tenants still had not made the installment payment, Middlebelt could ask the court to enter a consent judgment for $400,000, less what the tenants had already paid.

The tenants failed to make the twelfth payment for $22,500, due on October 1, 2009. The next day, Middlebelt emailed one of the tenants, informing the company that it had until October 12 to cure the late payment. The tenants did not pay, and on October 13 Middlebelt filed a motion in district court to enter a consent judgment, seeking $400,000 minus the payments already made. Later that day, one of the tenants emailed Middlebelt, apologizing for the late payment and saying it had sent the check that day via overnight mail. Middlebelt received the check on October 14, and it later received the thirteenth and final payment on time.

The district court denied Middlebelt's motion for a consent judgment. In a one-page order, the court explained in full that "Defendants have performed their obligations under the settlement agreement. Defendants have made the required thirteen payments, although it appears that one payment was a day or two late. Under all the circumstances, the court finds the entry of the consent judgment unwarranted." R.40. Middlebelt appealed.

S & Q Rib Shack subsequently filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia. As a result, this appeal is automatically stayed as to S & Q Rib Shack. *See* 11 U.S.C. § 362(a)(1); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 901 n.5 (6th Cir. 2009). We address only Middlebelt's claims against the other tenants, Moe's Southwest Grill and Raving Brands. *See Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993).

II.

Appellate courts generally review a district court's decision to grant a consent judgment for abuse of discretion. *See Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 564 (6th Cir. 2001). One way of demonstrating an abuse of discretion, however, is through a mistake of law. *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995). In this instance, as best we can tell, the court refused to enter the consent judgment based on its reading of the settlement agreement. Interpretations of contracts, such as a settlement agreement, *see Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir.1992), receive fresh review, *Boyer v. Douglas Components*

*Corp.*, 986 F.2d 999, 1003 (6th Cir.1993), and Michigan law governs our construction of the contract, *see Shields v. Gov't Emps. Hosp. Ass'n, Inc.*, 490 F.3d 511, 515 (6th Cir. 2007).

Typically, a "delay of only one day, where the delay admittedly causes no detriment, amounts to substantial performance of an accord and satisfaction contract." *A. E. Giroux, Inc. v. Contract Servs. Assocs., Div. of Premium Corp. of Am., Inc.*, 299 N.W.2d 20, 21 (Mich. Ct. App. 1980). When time is of the essence, however, "the stipulation as to the time must be observed." *Nedelman v. Meininger*, 180 N.W.2d 37, 43 (Mich. Ct. App. 1970); *see* 15 Williston on Contracts § 46:2 (2010).

Assuming that the tenants made the twelfth payment one day after the end of the ten-day cure period, the question becomes whether the tenants "substantially complied" with the settlement agreement, permitting the court to excuse the late payment, or whether "time was of the essence," precluding the court from declining to enforce the agreement by its terms.

The key provision of the agreement says:

> **Consent Judgment**. If Tenant fails to timely cure any late payment, then Landlord shall be entitled to file a motion with the court for entry of a "Consent Judgment," [which] enters judgment for Landlord against Defendants . . . in the amount of [$400,000], less any payments received by Landlord . . . . Defendants acknowledge that Landlord presented claims . . . of $476,915, plus attorney fees, . . . acknowledge that Landlord's ability to obtain entry of the Consent Judgment in the event of Defendants' failure to comply with the Payment Plan is essential consideration relied upon by Landlord in agreeing to the other terms of this Agreement, and Defendants absolutely, unconditionally and irrevocably waive any defense to entry of the Consent Judgment or right to appeal the entry of the Consent Judgment EXCEPT to the extent

> that (a) Defendants establish actual payment . . . either timely or within the applicable cure period . . . or (b) that Landlord failed to tender necessary notice . . .

R.36-2 ¶ 3.

Many of these terms "show that the intention of the parties is that time shall be of the essence of the contract." *Friedman v. Winshall*, 73 N.W.2d 248, 254 (Mich. 1955). The agreement says that the tenants' failure to pay on time means that Middlebelt "shall be entitled" to seek a consent judgment for a greater amount than the one required under the payment plan. This provision, together with the scheduled due dates for payment and the fixed cure period, show that timeliness was essential to the agreement. What the parties created was a default clause, one that would not go into effect if the tenants paid their $300,000 obligation under the settlement on time but one that would require the tenants to pay $100,000 extra if they could not cure a late payment within ten days. It is difficult to envision any purpose served by this clause other than to ensure that the tenants paid their obligations on time, something they apparently had not done under the original lease, and something that the risk of an additional $100,000 payment for *untimely* payments would entice them to do.

*Friedman*, a Michigan Supreme Court decision, supports this view. In that case, the contract said that, if certain conditions were not met in 105 days, the contract would become "null and void." 73 N.W.2d at 250. That language, the court held, "clearly implie[d]" that time was of the essence because "any clause which provides in unequivocal terms that if the fulfilment is not within a specified time the contract is to be void will have that effect." *Id.* at 253–54; *see also Grade v.*

*Loafman*, 22 N.W.2d 746, 747 (Mich. 1946). The same is true here. Under the contract, the tenants' failure to cure a late payment within ten days establishes that an immediately executable consent judgment would replace the payment plan in the agreement. This, too, "clearly implies" that Middlebelt and the tenants made timeliness essential to the agreement.

*Burton Indus., Inc. v. Atlas Tech., Inc.*, No. 259052, 2006 WL 1290364 (Mich. Ct. App. May 11, 2006) (per curiam), points in the same direction. The parties signed a consent judgment requiring the defendant to pay the plaintiffs in three installments in an amount that was less than what they owed under the original contract. *Id.* at *1. The consent judgment included a default clause providing that, if the defendant failed to "make any payment when due," the "entire original balance . . . less any payments previously made . . . shall be payable as a judgment forthwith and the Plaintiff may have immediate execution thereon." *Id.* When defendants missed one of the payments by two days, the plaintiffs sought the remaining balance of the original contract amount, and the defendant objected. The Michigan Court of Appeals refused to excuse the two-day delay: "The fact that the judgment required payment of designated sums on specified dates and provided a clear sanction upon default leads to the conclusion that time was of the essence. The inclusion of the default provision demonstrates that timeliness of payments was important to the agreement." *Id.* at *3. In today's case, the parties' provision for entry of a consent judgment serves the same timeliness function as the default provision in *Burton*.

*Package Co. v. Brooks*, No. 215949, 2000 WL 33385204 (Mich. Ct. App. Dec. 26, 2000) (per curiam), makes the same point. Through a consent judgment, the defendant agreed to pay $100,000

over a period of time under a payment plan, one that made the full $100,000 immediately due upon default. *Id.* at *1. When the defendant made one late payment, the plaintiff sought to collect the entire judgment. *Id.* The trial court declined, ruling that the plaintiff had "substantially complied" with the judgment. *Id.* The Michigan Court of Appeals reversed, holding that "[t]he fact that the judgment required payment by a certain date and provided for a harsh sanction upon default is an indication that time was of the essence." *Id.*

*A. E. Giroux v. Contract Services Associates*, 299 N.W.2d 20 (Mich. Ct. App. 1980), is not to the contrary. The parties settled a dispute for $42,549 to be paid in one lump sum, and the defendant paid one day late. *Id.* at 20. When the plaintiff sued for breach of the settlement, the Michigan Court of Appeals held that the one-day delay was "de minim[i]s" and amounted to substantial performance because plaintiff had suffered no "material damage." *Id.* at 20–21. The *Giroux* settlement, however, did not include a default provision, while Middlebelt retained a contractual right to seek a specified amount of damages. *See Package Co.*, 2000 WL 33385204 at *1 (holding that the trial court's refusal to enforce the timeliness requirement "result[ed] in a detriment to the plaintiff" because it "lost its right" to the amount provided for in the default provision).

Bolstering this interpretation, the settlement agreement says that Middlebelt's "ability to obtain entry of the Consent Judgment in the event of Defendants' failure to comply with the Payment Plan is *essential consideration* relied upon by [Middlebelt] in agreeing to the other terms of this Agreement." R.36-2 ¶ 3 (emphasis added). In return for dropping its lawsuit for $476,915 plus

attorney's fees, Middlebelt agreed to accept $300,000 instead—so long as the payments came on time, a requirement of moment to a party that wanted to get out of the business of dunning its tenants. If the payments did not come on time and if the tenants did not cure the delay within ten days, the parties agreed it was "essential" that Middlebelt be able to obtain an immediate judgment for a greater amount, though less than the amount originally sought. Time matters under such an agreement; otherwise, the "essential consideration" that Middlebelt bargained for serves no function.

The agreement also says that the tenants "absolutely, unconditionally and irrevocably waive any defense to entry of the Consent Judgment" unless one of two exceptions applied: either that the tenants could show timely payment or that they could show Middlebelt failed to provide notice of a late payment. That these are the *only* defenses confirms that an untimely payment, save in the absence of notice, would lead to the consent judgment.

The tenants read the agreement differently. They point out that it says Middlebelt "shall be entitled to *file a motion* with the court for entry" of a consent judgment, R.36-2 ¶ 3 (emphasis added), not that it "shall be entitled to entry" of a consent judgment, insisting that the word "file" shows that the agreement gave the district court discretion not to enter judgment. *See* Tenants Br. at 12. They also point to language in the district court's stipulated order of dismissal that refers to the "*potential* entry of a consent judgment," R.35 (emphasis added), suggesting the same thing.

Read in context, however, the right to "file a motion" for, and the right to a "potential" entry of, a consent judgment most naturally refer not to some yet-to-be-defined contractual defenses or

judicial discretion but to the two explicit defenses included in the agreement. Outside of these defenses, the tenants have "absolutely, unconditionally and irrevocably" waived the right to contest entry of the consent judgment. A court's power to enter (or not to enter) the consent judgment is limited to enforcing the terms of the agreement. *Cf. Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994). And when contract terms are clear, courts generally enforce them. *Upjohn Co. v. New Hampshire Ins. Co.*, 476 N.W.2d 392, 397 (Mich. 1991); *see also The Lefko Group v. Gonzalez*, No. 203669, 1999 WL 33455088 (Mich. Ct. App. 1999) (per curiam) (enforcing a nearly identical agreement).

That leaves two defenses to enforcement of the settlement agreement, made at various times in this case but not yet addressed by the district court. One is whether the tenants in fact missed the deadline, given that the tenth day was a holiday, Columbus Day, and given the traditional rules for counting days in the federal civil rules as well as under Mich. Comp. Laws § 435.101. The other is whether a $100,000 penalty for failing to cure a late payment within ten days amounts to an unreasonable penalty, one that Michigan law makes unenforceable. We entrust both issues to the good hands of the district court for resolution in the first instance.

III.

For these reasons, we vacate the judgment and remand the case for the district court's consideration of the other defenses implicated by this dispute.