SMITH *v.* LAWRENCE.

## James M. Smith v. Horatio I. Lawrence and others.

*Specific performance of contract: Reasonable time.* Courts will only enforce the specific performance of contracts where, in view of all the circumstances of the case, it seems just and equitable to do so; and where a party has laid by, without performance on his part, until there has been such a change in the value of property sold as to render the contract unequal if made now, the court will refuse relief.

Smith purchased pine lands of defendant by contract, in October, 1856, and paid the first instalment—the balance, of $3,800, to be paid in three annual instalments. He sold off $1,200 of the timber. The land becoming unsaleable, he failed to make the other payments. After considerable correspondence in regard to the payment, defendant wrote plaintiff, in 1862, that the contract had been long since forfeited. Up to this time, defendant had paid the taxes on the premises. In 1863, defendant sold the lands to third parties. Plaintiff thereupon notified them that he claimed the lands under his said contract, but took no steps to enforce his claim. The purchasers went upon the premises, and lumbered during one season. The land having increased largely in value, Smith, in 1865, filed his bill against them and defendant for a specific performance of the contract. *Held,* that if plaintiff had desired to perform his contract, he should have done so within a reasonable time.

*Heard May 21st. Decided May 25th.*

Appeal in Chancery from Muskegon Circuit.

This was a bill to enforce the specific performance of a written contract for the sale of land.

A cross bill was also filed by defendant, for the purpose of having the contract cancelled and delivered up.

A decree was rendered in the court below dismissing the bill, and ordering the contract to be cancelled.

The facts are stated in the opinion.

*S. T. Douglass* and *S. D. Miller,* for complainant.

This court has uniformly assumed discretionary power in enforcing the specific performance of contracts, and, while declaring that the exercise of the jurisdiction could not be demanded, as a matter of course, or *ex debito justitiæ,* no uniform rules, no unbending principles, no technical

abstractions, have been laid down as governing the reasonable discretion of this court. — *Har. Ch.* 124; 5 *Mich.* 123; 7 *Id.* 405; 8 *Id.* 463; 11 *Id.* 9; 12 *Id.* 193; 14 *Id.* 105; 15 *Id.* —; 2 *Story Eq. Jur.* §§ 724, 742, 750, 769, 771, 776.

The burden, therefore, rests upon the party seeking relief to present such superior equities that the court can not remain passive, but must interfere for the protection of justice and fair dealing. — 13 *Ves.* 324; 1 *Johns. Ch.* 370; 6 *Id.* 222.

From the evidence, it appears that complainant has acquiesced in the assertion of defendants' title to the land, and that he has abandoned and rescinded the contract.

He is also estopped by inaction, loss of time, and the intervention of the rights of third parties, from asserting any equitable rights, under the contract.

*C. I. Walker* and *Geo. Gray*, for defendants.

1. Time is not made the essence of the contract between these parties, and, in such case, mere delay or neglect on the part of the vendee to make the required payments, is no ground for denying specific performance, unless that delay or neglect has been very great, and without reasonable excuse. — 3 *Lead. Cas. in Eq. pp.* 7, 5, 8, 83, 84, 86, 87; 8 *Mich.* 46, 49, 472; 11 *Id.* 9; 14 *Peters,* 175.

And in this case there has been no great increase in the value of the property, that would make it inequitable for the complainant to enforce specific performance. — 2 *Lead. Cas. in Eq.* 80; 6 *Wheat.* 528; 11 Paige, 354.

Nor is there any evidence that the complainant at any time intended to abandon the contract, and any presumption of abandonment that would have arisen from the length of time, is repelled by all the circumstances of the case; including the possession of Smith, through S. Lawrence, as late as 1861, and until H. I. Lawrence forbid further cutting or removal of timber. — 3 *Lead. Cas. in Eq.* 87.

SMITH v. LAWRENCE.

2. But when, as in this case, there had been an acquiescence on the part of the vendor in the delay or neglect of the vendee to make the payments, the vendor is not at liberty to declare the contract forfeited, without clear notice to the vendee, and without giving him a reasonable time within which he may perform and make payment. — 3 *Lead. Cas. in Eq. pp.* 66, 86, 87; 4 *Mich.* 573; 11 *Id.* 19; 4 *Johns. Ch.* 560; 8 *Paige* 426, *and note;* 1 *Hoff.* 137; 5 *Rich. Eq.* 570; 6 *Id.* 324; 2 *Ohio St.* 332; 2 *Clark's Ia.* 126; 26 *Ill.* 611; 2 *Beav.* 183; 6 *Id.* 126.

At the very time when the defendant, H. I. Lawrence, made this contract of sale to his co-defendants, he was entirely at liberty to have enforced the specific performance of the contract in question with Smith, or to have sued him on his covenants for his purchase money; and these rights to specific performance are mutual. — 3 *Jones' Eq.* 84.


COOLEY J.

The specific performance of contracts must always rest in the sound discretion of the court; to be decreed or not as shall seem just and equitable under the peculiar circumstances of each case. It is frequently ordered in favor of a party who has been for a considerable period in default, if he has never abandoned the contract, and the other party has suffered nothing from the delay for which he can not be compensated in the decree. If, however, succeeding the default, there has been a considerable change in the value of the property, this may be reason sufficient for denying the specific relief, inasmuch as the contract would thereby become an unequal one, and to enforce it would be to encourage delays by enabling the party to take advantage of changes in his favor, though he might have delayed performance intentionally, and not meaning to perform unless favorable changes should occur.

The contract in question in this case was made October 1, 1856. It is apparent from the evidence that it was entered into by Smith as a matter of speculation, and in the hope of making money by the sale of the pine timber. Before the first annual payment fell due, the depression in business circles was so great as to render that which before seemed likely to result in profit, a losing bargain. That payment was not made; and it is highly probable that there was no time from thence until the sale to Lawrence and Backus, nearly six years later, when Smith would not gladly have been relieved of his contract if practicable without actual loss.

Horatio I. Lawrence, however, did not press for payment, and the correspondence between the parties shows clearly that he was willing to receive payment and to recognize the contract as valid up to the 25th of February, 1862. At that time he writes Smith that the contract had long been forfeited as far as the latter was concerned, and that he, Horatio I. Lawrence, was only hesitating as to what he would do on his part.

To know what was meant by this last clause of the letter, it may be necessary to look a little into the prior correspondence between the parties. It appears that Smith had been making propositions looking to a surrender of the contract on being repaid what he had expended under it, and that he had also proposed to take a part of the land only on payment of a sum named. Lawrence had not accepted either of these offers, but had proposed to Smith that the latter surrender the contract cancelled, without any re-payment. This, Smith had declined for the time, assigning as a reason that he needed it for the purposes of a suit which he had brought against Sidney Lawrence for the price of pine timber sold him from the lands in 1857, but saying that when that suit was disposed of he trusted the business could be settled between them. In another letter, apparently referring to the same proposition

by Horatio I. Lawrence, he says that when he can make the collections due from Sidney Lawrence he shall be willing to accede to a former proposition of Horatio I. Lawrence if still made.

Without looking at the case as it stands upon the evidence aside from this correspondence — which is certainly the most favorable view to take for the complainant — we think it apparent that for some time preceding February 25, 1862, Smith had not contemplated performing the contract, but had relied upon being able to make some more satisfactory and advantageous arrangement for himself when the suit with Sidney Lawrence was disposed of. And although it is probable that nothing had occurred up to this time which would preclude a specific performance on his behalf if he had sought it, yet the letter from Horatio I. Lawrence of that date, apprising Smith that he considered the contract forfeited, was a sufficient notification to the latter, under the circumstances, that if he desired to perform, he must apply in a reasonable time thereafter for the purpose.

The statement by Lawrence that he was hesitating as to what he should do on his part is very far from an intimation that he concurred in any further extension of time, and may have had reference either to Smith's proposition to purchase a portion of the land, or to proceedings against him for declining to cancel the contract, or to sales to others. Whatever it may have meant, it certainly is no such clear assent to the extension of the contract as we think should be shown where a party claims an extension after the long delay which had here intervened, and after being fairly notified that the vendor considered the contract forfeited.

Smith, however, took no steps towards performance; and in June, 1863, the lands, so far as they were of value, were sold to the defendants, Sidney Lawrence and Backus. Up to that time the taxes had for the most part been paid by Horatio I. Lawrence, and although Smith claims to have

SMITH v. LAWRENCE.

paid a small amount to apply on the contract besides the down payment of $1,000, yet the proof on the subject is not very clear, and the amount as claimed was of small importance. Although after the sale to Sidney Lawrence and Backus, Smith informed them that he claimed rights under the contract of sale to himself, he still took no steps to enforce that contract, and it was only after they had taken off timber for one season that he commenced the present suit. In the meantime it is apparent that a great change had taken place in the value of the land. Horatio I. Lawrence had sold the second time at a considerable deduction from the first contract price, but in January, 1865, when the present suit was commenced, pine timber on the stump is shown to have been worth twice as much as it was sold for by Smith the year after he made his contract. In this great rise in the value of the timber is the secret, so far as we can discover it from this record, of Smith's willingness and anxiety to have this contract performed in his favor. He waited until the circumstances were all changed; until the land had been sold; until his losing bargain had become a speculation, and nearly three years after being notified that the contract was considered forfeited, before filing the present bill. At no time had he ever tendered performance, though he had said on one occasion that he was ready to perform, but without adducing any evidence of readiness. The payments which he had made, conceding the most that could be claimed on the evidence, were less than the interest over due on the contract. We are unable to perceive any circumstance upon which a court of equity could seize as warranting specific performance in his favor, and we think the Circuit Court was correct in dismissing his bill and ordering the contract to be cancelled.

Decree affirmed with costs.

The other Justices concurred.