ROSE *v.* GILBERT.

1. SPECIFIC PERFORMANCE—AGREEMENT TO PURCHASE LAND—DELAY
   —CHANGED CIRCUMSTANCES.
   Where parties, seeking specific performance of agreement to purchase land under which they had made a $1,000 deposit for
   stated purchase price of $35,000, delayed some three and a
   half months after time provided by agreement within which it
   might be performed, such default barred relief sought under
   record showing plaintiffs had theretofore rescinded the contract and defendant then sold the land at a higher price.

2. SAME—DISCRETION OF COURT.
   Specific performance is not a remedy of right but rests in the
   sound discretion of the court.

Appeal from Wayne; Brennan (John V.), J. Submitted January 14, 1948. (Docket No. 1, Calendar
No. 43,669.) Decided April 5, 1948.

Bill by Louis Rose and wife and Ira A. Hotchkiss
against Estella M. Gilbert for specific performance
of agreement to sell land. Standard Oil Company,
an Indiana corporation, intervened. Bill dismissed.
Plaintiffs appeal. Affirmed.

*Harold M. Silverston,* for plaintiffs.

*R. Noble Wetherbee,* for defendant.

*MacMahon, Abbott & Roberts,* for intervenor.

BUSHNELL, C. J. This is an appeal by plaintiffs
Louis Rose and Tilly Rose, his wife, and Ira A.

Hotchkiss, from a decree dismissing the bill of complaint in which they sought specific performance of an agreement for the sale of lands. Defendant Estella M. Gilbert for some years owned property jointly with her husband, located at the corner of Joy road and Southfield road in the city of Detroit. This property consists of 8 lots, numbers 40 to 47, inclusive, each 20x100 feet, fronting on Joy road, and an irregularly shaped parcel having a total frontage of 267.41 feet on Southfield road, with a depth of 71 feet on the southerly 127.41 feet of the Southfield frontage, and a depth of 43 feet on the remainder.

Rose and his wife offered to purchase the entire premises. After considering this offer Mrs. Gilbert accepted it, and a written agreement of purchase was executed on April 4, 1945. Plaintiffs paid $1,000 and agreed to pay $7,000 more upon execution of a land contract, the balance of $27,000 to be paid in monthly instalments of not less than $200 per month during the first year and $500 per month during the second and third years. The balance of the purchase price was to be paid on or before five years, but in any event in not less than three years. The preliminary agreement contains the following:

"Deal to be closed within 15 days from date abstract or title insurance certified to date is delivered to purchaser showing marketable title."

Three abstracts of title, but not certified to date of their delivery, were given to Rose, who requested in lieu thereof a title policy. A title policy commitment was provided showing record title in William J. Gilbert, the deceased husband of Mrs. Gilbert. Subsequently a title insurance commitment was issued on May 12, 1945, showing fee simple title in Mrs. Gilbert, subject to plaintiffs' right to purchase.

Rose had been negotiating with parties who owned and operated a number of theaters, with a view of leasing to them the building which he and his wife intended to erect on the property in question. During these negotiations it developed that the Wayne county road commission contemplated condemnation of a large portion of the property.

On June 21st, Mrs. Gilbert's attorney advised Rose and his wife, in writing, that more than 15 days had elapsed since the acceptance of the offer and the delivery of a title insurance commitment showing marketable title. He asked that the land contracts which had been provided for examination be returned, adding:

"If you still wish to complete this transaction advise me at once and I will see what Mrs. Gilbert wishes to do."

Plaintiff Hotchkiss, who is a real estate broker, replied the next day, calling attention to the contemplated condemnation, and the fact that the Department of Building & Safety Engineering had refused to issue a building permit. Hotchkiss suggested that the Roses might be interested, however, in purchasing the portion left after condemnation. His letter concluded with the following statement:

"Please return the deposit of $1,000 and we will be glad to negotiate the purchase of the balance of the land if Mrs. Gilbert cares to sell it."

Her attorney replied that, in his opinion, Mrs. Gilbert was entitled to retain the $1,000 deposit as liquidated damages for breach of the agreement, and he again requested that the land contract and abstracts be returned to him.

On August 2d, plaintiffs' present counsel advised defendant's counsel that there had been a failure of consideration, saying:

"Therefore, my clients are willing to enter into a new agreement for the purchase of the property which will not be condemned, or if your client is not willing to make such new agreement, then my clients desire to rescind the entire transaction and have returned to them the deposit of $1,000 paid to your client in connection with said transaction.

"For your information, I have in my possession the signed land contracts which you delivered to Mr. Hotchkiss, and also the abstracts involved herein, which I will dispose of in any manner you indicate."

However, on July 19, 1945, a quitclaim deed was recorded, executed by plaintiffs Rose to plaintiff Hotchkiss, covering the lands in question herein and conveying to him a one-half interest therein.

On September 13, 1945, Mrs. Gilbert executed and delivered to intervening defendant Standard Oil Company, of Indiana, a 30-day option to purchase the property in question for the sum of $40,000, which option was exercised by Standard, in writing, on October 12, 1945.

The condemnation proceedings mentioned resulted in a settlement or award in the sum of $15,000 for that portion of the property taken. It was stipulated on the record that this money should be paid to Mrs. Gilbert and "credited by her on the purchase price to whichever one of the parties might eventually be decreed to be entitled to purchase the property." The trial judge held, "both as a matter of law and as an issue of fact, that the contract agreement between the parties was rescinded and abrogated," and that the quitclaim deed and contract agreement attached thereto should be cancelled and discharged of record.

In the decree filed in this cause, it was determined, among other things, that defendant Gilbert had performed her obligations under the preliminary agreement, and that it had been breached by plaintiffs who were in default at all times subsequent to June 19, 1945, after which date they rescinded and abrogated the same. A letter from plaintiffs, under date of September 14, 1945, notifying defendant that they were now ''ready, willing and able to complete said transaction as set forth in the preliminary agreement executed between the parties, and you are requested to take the necessary steps to effectuate this purpose,'' was treated as an attempt to revive the transaction subsequent to a claimed increase in real estate values following the termination of the war with Japan on August 14, 1945.

Although time was not specifically stated to be of the essence of the contract, plaintiffs' delay in concluding the transaction is one of the determining factors in this cause. While plaintiffs' default does not of necessity bar the relief they seek, nevertheless specific performance is not a remedy of right but rests in the sound discretion of the court. *Reo Motor Car Co.* v. *Young,* 209 Mich. 578; *Krause* v. *Hoffman,* 239 Mich. 348; *St. Pierre* v. *Masson,* 243 Mich. 60. See, also, *Tiley* v. *Chapman,* 320 Mich. 173.

A *de novo* review of the testimony requires the conclusion that in this instance sound discretion could only be exercised by the denial of specific performance. The sudden and marked increase claimed as to the value of the land after which plaintiffs sought to enforce specific performance, would make such relief unjust and inequitable under the ''peculiar circumstances'' of this case, and would of itself be sufficient ground for denying specific performance. *Smith* v. *Lawrence,* 15 Mich. 499;

*Marvin* v. *Solventol Chemical Products, Inc.,* 298 Mich. 296; and *Mahon* v. *Sahration,* 310 Mich. 563.

Furthermore, the record conclusively shows that plaintiffs abandoned, "rescinded and abrogated" their agreement to purchase.

The decree dismissing plaintiffs' bill of complaint is affirmed, with costs to appellees.

SHARPE, BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.