## GAVAL v. WOJTOWYCZ.

1. Contracts—Mutual Rescission—Actions of Parties.
   Mutual rescission of a contract requires a meeting of the minds as does the making of a contract and consists of a mutual release of further obligations under the contract and a restoration of the status quo; thus there was no mutual rescission of contract where the parties negotiated through agent real estate broker for a mortgage not contemplated by contract and where the negotiations were neither based on an intent to discharge the contract nor were sufficient departure from its terms to constitute a new contract.

2. Same—Abandonment.
   Plaintiffs, purchasers in a contract for the sale of land, did not abandon contract where defendants' claim that contract was no longer in effect resulted from acts of real estate company, which was defendants' agent, and defendants did not deal directly with plaintiffs; an absolute refusal to perform or conduct clearly demonstrating intention to abandon is necessary to work abandonment of a contract by a party.

3. Same—Specific Performance.
   Rule of mutuality of remedy as necessary to granting of judgment of specific performance requires only that the judgment operate effectively against both parties, giving each the bene-

---

References for Points in Headnotes
[1] 17 Am Jur 2d, Contracts § 459 et seq.
[2] 17 Am Jur 2d, Contracts § 484.
[3] 17 Am Jur 2d, Contracts § 11.

fit of mutual obligations; thus a contract for the sale of land satisfied the requirement of mutuality where it imposed mutual obligations on the contracting parties with liability for breach even though it provided for return of deposit if financing was not available, hence a judgment of specific performance was properly granted.

Appeal from St. Clair, Streeter (Halford I.), J. Submitted Division 2 January 9, 1968, at Lansing. (Docket No. 3,121.)    Decided September 26, 1968. Rehearing denied November 12, 1968.    Leave to appeal denied January 23, 1969.    See 381 Mich 799.

Complaint by John Gaval and Ruth Gaval against Walter Wojtowycz and Margarete Wojtowycz for specific performance of a contract to convey real estate.    Judgment for plaintiffs.    Defendants appeal.    Affirmed.

*Roman Halanski,* for plaintiffs.

*Ray H. Boman,* for defendants.

LESINSKI, C. J.    The defendants, Walter Wojtowycz and his wife, appeal from a judgment of the circuit court requiring them to specifically perform a written contract to sell farm property in Mussey township, St. Clair county, to the plaintiffs, John Gaval and his wife.

The following facts and circumstances disclosed by the record gave rise to this litigation:

Mr. and Mrs. Wojtowycz owned a 114-acre farm near Capac, Michigan.    The property was listed for sale with the Adsit Realty Company, Detroit, Michigan.    Shortly after the listing agreement expired, in August, 1965, the real estate company located buyers for the farm, Mr. and Mrs. Gaval.    The real estate broker prepared an agreement of sale on a

standard printed form which the parties executed
on September 11, 1965. The plaintiffs made a total
deposit of $1,600, pursuant to the agreement, to be
applied on the purchase price of $17,500.

The written contract provided for a cash sale with
new mortgage in the following language:

"B. * * * Purchaser agrees that he will im-
mediately apply for a conventional mortgage in
the amount of $12,500, and pay $5,000 down plus
mortgage costs and adjustments in cash. Purchaser
agrees to execute the mortgage as soon as the
mortgage application is approved, a closing date
obtained from the lending institution, and, if ap-
plicable, final inspection of the property approved
by the Veterans Administration or F. H. A. * * *

"3. If this offer is accepted by the seller and if
title can be conveyed in the condition required here-
under, the purchaser agrees to complete the sale
within five days after delivery of the abstract or
policy of title insurance; *however, if the sale is to
be consummated in accordance with paragraph B,
then the closing will be governed by the time speci-
fied for obtaining a mortgage.* * * *

"8. * * * If the offer is accepted by the seller,
*the purchaser agrees to complete the purchase of
said property within the time indicated in paragraph
3.*" (Emphasis supplied.)

The plaintiffs made application to a bank in
Capac, Michigan, for a $12,500 mortgage some time
between September 11 and November 3, 1965. The
exact date application was made does not appear
in the record; however, the real estate broker testi-
fied that he had a telephone conversation with a bank
official on November 3 as follows:

"The conversation I had with him was on the
delay that they had in going out and making an
inspection of the property and giving us an answer
whether they wanted to mortgage or not. Evidently

it is a small operation. Evidently they are extremely busy. because they were aware of the application for some time before they actually made an inspection of the property and notified us of their findings of their inspection."

Following this conversation, the broker received a letter from the bank dated November 5, requesting him to advise plaintiffs that the bank would not lend over $10,000 on the property. In view of the bank's decision, the broker got the parties to agree orally to an alternative method of completing the necessary financing, whereby the defendants would take a second mortgage for $2,500. The broker obtained an abstract from defendants and had it certified as current by November 29. The plaintiffs received the abstract on December 2 for their examination and returned it to the broker some time prior to January 8, 1966, when it was mailed to the bank.

The plaintiffs received a letter from the bank dated January 11, 1966, again stating there would have to be a $10,000 ceiling on the property loan. The bank also wanted to know where the funds were coming from to reduce the mortgage request from $12,500 to $10,000. The plaintiffs discussed the letter with a salesman of the real estate company and it was decided to look for other sources of financing in view of the bank's cautious inquiries. Nothing further was said to the bank.

The real estate salesman proceeded on his own initiative to suggest to defendants that the sale could be consummated by a land contract arrangement. Apparently a disagreement arose between the salesman and defendants concerning the commission which inflamed both parties and ended with the salesman saying words to the effect that there was no deal and defendants taking back their ab-

stract. The salesman had been successful in locating a private party willing to finance the purchase for plaintiffs. Stephens, an investor, testified he was willing to purchase the property for cash and resell it to plaintiffs or to loan plaintiffs $12,500 against a mortgage, whatever suited defendants. What transpired at this point is best told by the defendant husband on direct examination.

"Q. Who did you next hear from?

"A. February 7th, a Monday, Mr. Adsit called me. * * *

"Q. What did he say?

"A. He said he got another buyer or he can get mortgage for Mr. Gaval, either way I want it, but bring the abstract back. * * *

"Q. What did you tell him?

"A. I said I think about it.

"Q. Then what happened after that?

"A. Well then Mr. Adsit came the 8th or 9th of February to my house, about two days later. * * *

"Q. What did he say to you at that time?

"A. He show me the agreement with Mr. Stephens for seventeen thousand five hundred dollars cash and he said either one, you can sign that agreement and get cash or Mr. Gaval can get mortgage too.

"Q. What did you say?

"A. I said give me two week's time and I will let you know if I go through, agree or not.

"Q. Then what?

"A. Mr. Adsit said then in order to collect a commission, there is a sale, but he hate to collect a commission and no sale. It means he understands that he was going to collect a commission from me and I said if you want the commission I might pay you commission if I have you, but I wouldn't make no sale.

"Q. You said you would not sell the property to this man?

"A. No, I was tired. Mr. Galloway [the salesman] called names. Mr. Adsit [the broker] tried to scare

me on commission, so I decided not to deal with him any more.

"*Q. You told him* [Adsit] *at that time you were not going through any further dealing with him?*

"*A. Right.*

"*Q.* Was that the end of it as far as you are concerned?

"*A.* That was the end." (Emphasis supplied.)

Subsequent to this conversation, Mr. Wojtowycz telephoned Mr. Gaval advising him to get a refund of his deposit since the real estate company was trying to bring in another purchaser. However, the record is clear that at no time did the plaintiffs seek a return of their deposit. The significant thing about the telephone call is that it was the first and only time the principals to the contract had direct contact with each other prior to the trial, since all transactions between them had been handled by the real estate company. The plaintiffs testified they had no knowledge of the defendants' refusal to sell until receipt of a copy of the broker's letter to defendants, dated February 15, 1966, advising them to reconsider their proposed breach of contract. This suit for specific performance was brought upon refusal of defendants to consummate the sale.

On this appeal, defendants question the action of the circuit court in granting a judgment of specific performance and raise the following issues for our consideration:

(1) Did the oral agreement for a second mortgage work a mutual rescission of the original contract?

(2) Did certain acts attributed to plaintiffs constitute abandonment or rescission of the original contract?

(3) Did the contract lack mutuality thereby precluding a decree for specific performance?

Defendants' claim that the oral agreement for a $2,500 second mortgage operated as a mutual rescission of the original contract is without merit.

"To constitute a mutual rescission there must of necessity be a mutual release of further obligations under the contract and a restoration of the *status quo*." *Simpson* v. *Murphy* (1924), 229 Mich 449, 453.

See also *Tuomista* v. *Moilanen* (1945), 310 Mich 381. A mutual rescission as such requires a meeting of the minds as does the making of a contract. *White Pine Lumber Co.* v. *Manufacturers' Lumber Co.* (1916), 191 Mich 390.

We are not persuaded that the scope and character of the oral agreement manifests an intention to discharge the obligations of the parties under the first contract. Nor is it clear that the parties intended the second agreement to abrogate and supersede the first since the later oral agreement does not completely cover the same subject matter, but merely one term thereof. *Joseph* v. *Rottschafer* (1929), 248 Mich 606. We deem the proposed second mortgage financing to be in furtherance of the written contract and not such a departure from the terms of paragraph "B" thereof, set forth *supra,* as to constitute a new contract. *Doty* v. *Nixon* (1896), 109 Mich 266.

The defendants also contend that the plaintiffs by their acts abandoned or rescinded the contract. The defendants point to the oral agreement for a second mortgage and to the fact that the real estate company made alternative proposals for consummating the sale after execution of the written contract. A careful review of the record persuades us that the claimed acts of abandonment, *i.e.,* the proposed land contracts, the proposed sale to a third party,

the salesman saying the deal was off, and the return of the abstract, were independent acts of the real estate company (agent of the defendants). The plaintiffs testified that they knew nothing about the proposed sale to Stephens who would then resell to them.

The law concerning abandonment has been succinctly set forth in several Supreme Court decisions which quote with approval from 66 CJ, Vendor and Purchaser, § 295, pp 731, 732, as follows:

"Abandonment by the purchaser is shown  *  *  * *where he positively and absolutely refuses to perform the conditions of the contract,* such as a failure to make payments due, accompanied by other circumstances,  *  *  *  *or where by his conduct he clearly shows an intention to abandon the contract.* *  *  * As a general rule whether or not the purchaser's acts and conduct amount to an abandonment of the contract is a question for the jury, but such acts and conduct may be so decisive and unambiguous as to justify the court in deciding the question as a matter of law." (Emphasis supplied.) See also 91 CJS, Vendor and Purchaser, § 121.

See *Collins v. Collins* (1957), 348 Mich 320, 327, (68 ALR2d 575); *Tiley v. Chapman* (1948), 320 Mich 173, 175; *Dundas v. Foster* (1937), 281 Mich 117, 120; *Nelson v. Hacker* (1936), 278 Mich 383, 386, 387. Applying the rule to the acts of plaintiffs, whether done or authorized to be done, we do not find an abandonment or rescission of the original contract.

The defendants finally contend that specific performance should be denied because the original contract lacked mutuality of remedy and mutuality of obligation. The provision of the contract relied upon by defendants to support their contention reads:

"11.  *  *  * Additional conditions, if any: *  *  * If mortgage cannot be obtained, deposit

in full in the amount of $1,600 shall be returned to the purchaser."

The defendants say the contract lacked the element of mutuality once the bank informed the plaintiffs, in January, 1966, that it would not lend over $10,000 on the property, inasmuch as plaintiffs were then entitled to a refund of their deposit. The rule defendants believe to be applicable is stated in their brief as follows:

"It has been the long standing rule that specific performance will not be granted in favor of one party unless it can be also granted in favor of the other party."

The case of *Reinink* v. *Van Loozenoord* (1963), 370 Mich 121, cited by both parties, is dispositive of the issue of mutuality. The *Reinink* Court stated at pp 124, 125:

"In considering whether a contract for the sale of land may be decreed to be specifically enforced, a distinction should be made between mutuality of remedy and mutuality of obligation. The early view was that specific performance would not be available to one party unless that remedy was also available to the other party. 49 Am Jur, Specific Performance, § 35. In *Reo Motor Car Co.* v. *Young*, 209 Mich 578, that rule was rejected by this Court as presently having little force.

"The modern view on mutuality of remedy is set out in 49 Am Jur, Specific Performance, § 35, as follows:

" 'According to the reasoning of modern authorities, the fact that the remedy of specific performance is not available to one party is not a sufficient reason for refusing it to the other party. * * * Following this view it has been held that the rule of mutuality is satisfied if the decree of specific performance operates effectively against both parties and gives

to each the benefit of a mutual obligation. It is where the element of mutual obligation is lacking that equity will refuse to decree specific performance on the ground of want of mutuality of remedy. Thus, specific performance will not be granted where the complainant may at his option refuse to carry it out. But the mere fact that remedy by way of specific performance is not available to one party is not of itself sufficient to justify refusal of a decree.'

"2. Restatement of the Law of Contracts, § 372, pp 677, 678, states:

" '(1) The fact that the remedy of specific enforcement is not available to one party is not a sufficient reason for refusing it to the other party.' "

This Court reviewed the rule of mutuality in the recent case of *M & D Robinson Company* v. *Dunitz* (1968), 12 Mich App 5 wherein we said:

"We agree with the trial judge that 'the rule is not properly stated in terms of mutuality of remedy, but that in the more modern version there need simply be a mutuality of obligation to the extent that both sides to the agreement have at least some remedy against the other in case of a breach of the contract.' "

The agreement of sale imposed mutual obligations on the contracting parties with liability for breach of contract in the event of nonperformance. The rule of mutuality was therefore satisfied and a decree for specific performance was not precluded.

In light of the entire record, the trial judge correctly concluded:

"The squabble, if it was one, with the salesman cannot prejudice the rights of the parties themselves. Mr. and Mrs. Gaval have done nothing to cause them to lose their rights and benefits under this contract."

We find no error in the grant of a judgment of specific performance to plaintiffs.

Affirmed, costs to appellees.

McGREGOR and CANHAM, JJ., concurred.