## WILLIAMS v METOYER

RELEASE—HIDDEN INJURY—BURDEN OF PROOF—EVIDENCE—SUFFI-
CIENCY.

A releasor of liability for personal injury is entitled to relief from
the effect of his release where his proof persuasively shows a
fair and mutual want of knowledge at the time of execution of
the release of a hidden injury which later comes to consequen-
tial light; but such proof usually may not consist solely of
plaintiff's own testimony without any expert medical testimony
to establish the nature of plaintiff's injury and its likely origin
as a result of defendant's misconduct, and in the absence of
medical testimony corroborating the fact of hidden injury and
its likely origin set forth on the record plaintiffs have failed to
meet the burden of proof.

Appeal from Oakland, Clark J. Adams, J. Sub-
mitted Division 1 November 15, 1972, at Detroit.
(Docket No. 14092.) Decided April 25, 1973.

Complaint by Joe Williams and Delores Wil-
liams against Charlie Metoyer, Jr., for damages for
injuries and for loss of consortium sustained as a
result of an automobile accident. Accelerated judg-
ment for defendant. Plaintiff appeals. Affirmed.

*Nelson, Gracey & Turner,* for the plaintiffs.

*Bell, Hertler & Hopkins,* for the defendant.

Before: LEVIN, P. J., and V. J. BRENNAN and
O'HARA,* JJ.

REFERENCE FOR POINTS IN HEADNOTE
29 Am Jur 2d, Evidence § 139.
* Former Supreme Court Justice, sitting on the Court of Appeals by
assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

O'Hara, J. Plaintiff[1] filed suit to recover damage resulting from an accident in which his vehicle was struck by an automobile driven by defendant. Defendant moved for accelerated judgment under GCR 1963, 116.1(5) on the grounds that plaintiff's claim was barred by a release previously executed by the plaintiff. At the suggestion of the trial court defendant's motion was held in abeyance pending a determination by a court of equity as to whether or not defendant should be barred from asserting the defense of release. After hearing testimony, the trial judge determined plaintiff had not estab-. lished his right to set aside the release. Pursuant to the finding accelerated judgment was granted in favor of defendant on the grounds of release. Plaintiff appeals of right.

The single question presented on appeal is whether the trial judge erred in holding that the release was, under the circumstances of this case, a valid release barring plaintiff's recovery for the claimed injuries which allegedly developed subsequent to the time of the release.

The pertinent facts appear as follows: Plaintiff Joseph Williams drove his brother Tommy Williams' car into a service station in the city of Pontiac, sometime after 8 p.m. on June 14, 1970. As he later left the station and began to turn left into the eastbound lane of the street, his motor stalled. He sat there while several automobiles pulled around him. Then he got out of the disabled vehicle on the driver's side and began pushing it off the road while holding the steering wheel with the other hand. At this point defendant Metoyer travelling east on the same street struck the right side of plaintiff's vehicle and threw him to the pavement. The road was well lighted but it was

---

[1] His wife joined as a plaintiff in her action for loss of consortium.

raining and a bit foggy. Plaintiff had his automobile headlights on. Metoyer was issued a citation for speeding as a result of this accident. (The ticket recites that defendant was driving 25 m.p.h. at the time of the collision.)

Shortly after the accident, plaintiff Joseph Williams was taken to the hospital where he was treated for injuries to the neck, back, and legs. The examining physician saw him on four separate occasions for the injuries stated. The doctor's hospital report indicates the period of the plaintiff's disability was from June 14, 1970 to July 6, 1970, and further states the extent of permanent injury as "unknown". Plaintiff was aware of a small knot on the back of his head after the accident but didn't pay any attention to it because, he states, it was not giving him any difficulty.

. After the accident plaintiff alleges he was under continual pressure from his brother, Tommy Williams, to get the car repaired even though it could be safely driven in its then state. Finally, plaintiff's brother contacted defendant's insurance carrier and still later on, July 10, 1970, Tommy and Joseph Williams and the latter's wife, all went to the claims agent's office.

The claims agent told them he viewed the carrier's liability to plaintiff as highly questionable but offered to settle the matter for $300 on a "take it or leave it" basis in order to avoid additional adjuster's and legal expenses. Both plaintiff and his wife signed a document entitled "Release Of All Claims", dated July 10, 1970, which purports to release defendant Metoyer from any and all actions for personal injury and property damage[2]

---

[2] Obviously, plaintiff and his wife, who had no pecuniary or proprietary interest in the car, could not waive any cause of action which Tommy Williams might have for damage to his automobile. To the extent the release was valid, it merely released any claims plaintiff

arising out of the June 14, 1970 accident in consideration for the sum of $300.[3]

Approximately two or three months after the settlement was reached Joseph Williams allegedly began having headaches, dizziness, visual problems, and inability to sleep. He also claims these difficulties led to his missing much work in late 1970 and to his eventual bankruptcy.

This is the background against which the trial judge permitted defendant to raise the defense of release and granted defendant's motion for accelerated judgment on the basis of the release.

As is customary in chancery proceedings, our review is *de novo* but we accord considerable weight to the trial judge's findings of fact. *Biske v City of Troy,* 381 Mich 611 (1969).

In the instant case there was relative haste in settlement, *i.e.,* within 27 days of the accident (although clearly at the instance of plaintiff) and a somewhat nominal payment, but there is no suggestion that plaintiff was pressured into signing at a time he was not in complete possession of his faculties or that misrepresentation induced him to execute the release. The agent of defendant's insurance carrier testified he considered the liability of defendant as questionable. Rightly or wrongly he was entitled to take this position.

We find in plaintiff's testimony the suggestion that Joseph Williams' dizziness, sleeplessness, and visual difficulties were the symptoms of an uniden-

and his spouse had for personal injury or loss of consortium arising from the collision. This was amply demonstrated on oral argument when counsel for the insurance carrier produced a second release covering property damage signed by the aforesaid Tommy Williams the plaintiff's brother. This release bore the same date as that signed by plaintiff but recited that it was in the amount of $275.

[3] Plaintiff Joseph Williams and spouse ultimately settled with the insurance carrier for $300 although they knew he had lost a minimum of $500 in wages as a result of his injuries.

tified hidden injury unknown to the parties at the time of settlement. In *Hall v Strom Construction Co,* 368 Mich 253, 258 (1962), the Court said with reference to the controlling authorities:

"The essence of such authority is that relief is available to the releasor when he is able to *plead and prove that the injury—to which the symptoms of delayed disease or disability is probably attributable*—was mutually unknown when the release he would avoid was signed in return for a nominal consideration." (Emphasis supplied.)

The Court subsequently stated that the releasor was entitled to relief when the "releasor's proof *persuasively shows* a fair and mutual want of knowledge of a hidden injury which eventually comes to consequential light * * * ." (Emphasis supplied.) See also 71 ALR2d 82, § 18, pp 172–173.

It is an unusual case indeed where plaintiff can establish his right to avoid a release on grounds of mutual mistake by setting forth "persuasive proof" with solely his own testimony in view of the fact that the executed release by its own language generally belies the position plaintiff is taking in seeking avoidance. In most cases of this nature expert medical testimony to establish the nature of plaintiff's injury (and its likely origin as a result of defendant's negligent conduct) is necessary in order to adequately honor the reasonable reliance of an insurer on an executed release. Such testimony permits an intelligent judgment as to the inadequacy of consideration for the original settlement. If, indeed, Joseph Williams suffered a hidden injury which was mutually unknown at the time the release was executed it is difficult to understand why medical testimony corroborating the fact of hidden injury and its likely origin was not set forth on this record. In failing to produce

evidence to substantiate their claim plaintiff has failed to meet his burden of proof.

Affirmed, with costs to the defendant.

V. J. BRENNAN, J., concurred.

LEVIN, P. J., did not participate in the decision.