ZENKO v BOUCHER

OPINION OF THE COURT

1. SPECIFIC PERFORMANCE—VENDOR AND PURCHASER—CONTRACTS—
   DISCRETION—TIME OF ESSENCE—TERMINATION—REASONABLE
   TIME—EXTENSION OF TIME.

Specific performance is a remedy of grace and not of right, which
rests within the sound discretion of a court, the granting of
which depends upon the peculiar circumstances of each case,
and it is premature where it is sought under an option clause
where there has been no finding of fact by the trial court as to
when an option to purchase was to expire, whether an attempt
by the plaintiff seller to terminate the contract was justified,
whether the defendant buyer was entitled to a reasonable time
to complete the purchase after notice of termination, and
whether the plaintiff seller caused time to become an important
factor by his actions, or manifested a concurrence in an exten-
sion of time.

2. SPECIFIC PERFORMANCE—VENDOR AND PURCHASER—CONTRACTS—
   EQUITY—REASONABLE TIME—TIME OF ESSENCE—INTENT—
   PROPER REMEDY.

A trial court should be guided by general principles of equity in
determining whether a reasonable time for performance is
implied in a contract for the sale of real estate where there is
no provision that time is of the essence, where an investigation
into the contract is necessary to determine the intent of the
parties, and where consideration of the actions of both buyer
and seller is warranted to determine whether specific perform-
ance is a proper remedy.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 71 Am Jur 2d, Specific Performance §§ 35, 36, 67.
[3] 17 Am Jur 2d, Contracts §§ 361, 392, 393.
[4] 17 Am Jur 2d, Contracts § 242.
[5] 17 Am Jur 2d, Contracts § 484.
   77 Am Jur 2d, Vendor and Purchaser §§ 536, 537.
   What constitutes abandonment of land contract by vendee. 68
   ALR2d 581.

Dissent by O'Hara, J.

3. Contracts—Conditions Precedent—Waiver.

    *Conditions precedent in a contract may be waived by the party in whose favor they are made.*

4. Contracts—Courts—Parties—Rewriting of Contract.

    *Courts may not rewrite contracts for the parties to them.*

5. Vendor and Purchaser—Contracts—Abandonment—Refusal to Perform—Conduct—Intent to Abandon—Enforcement.

    *Abandonment by a purchaser under a contract to purchase real estate does not occur unless he positively and absolutely refuses to perform the conditions of the contract or it is determined from his conduct that he clearly intended to abandon the contract, and where such facts do not exist the contract should be enforced.*

Appeal from Grand Traverse, James M. Fitzpatrick, J. Submitted Division 3 January 15, 1975, at Grand Rapids. (Docket No. 20303.) Decided April 25, 1975.

Complaint by Edward Zenko and Margaret Zenko against Albert L. Boucher, Jr., seeking a declaratory judgment that a contract for sale of real estate be declared null and void. Defendant counterclaimed for specific performance of the contract. Judgment for plaintiffs. Defendant appeals. Remanded for further findings of fact.

*James W. Bussard,* for plaintiff.

*Hubbell, Blakeslee, McCormick & Houlihan,* for defendant.

Before: Allen, P. J., and N. J. Kaufman and O'Hara,* JJ.

---

  * Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

N. J. KAUFMAN, J. I concur with my brother
O'HARA that abandonment of this contract to pur-
chase is not sustained by the evidence. However, I
do not agree that it follows, *a fortiori,* that defend-
ant is entitled to specific performance of the con-
tract on his counterclaim. One further question
remains: Was plaintiff-seller justified in terminat-
ing the contract of sale because defendant failed to
complete the purchase within the 60 days specified
in the contract or within a reasonable time? The
specific dates of the transactions between the par-
ties are relevant to this inquiry.

The parties entered into the contract for sale of
the instant property on July 7, 1969. The contract
stated that, *"[p]urchase should be completed in 60
days after receipt of abstract* or title insurance
policy commitment and other evidence of title
herein required". (Emphasis supplied.) There is
some dispute as to when the abstract was received
by defendant. Plaintiff claims it was mailed July
8th. Defendant claims it was three or four weeks
after that date that he received the abstract.[1]

On September 7th, 1969, plaintiff called defend-
ant to inquire whether defendant intended to com-
plete the contract. On September 15, plaintiff
again phoned defendant to inquire as to defend-
ant's intention. Plaintiff testified that defendant
indicated at that time that "they weren't inter-
ested in any land unless they got the state land".
Judge O'HARA discusses defendant's negotiations
with the state and his efforts to complete the other
"Special Provisions" of the contract, and a discus-

---

[1] A fair reading of the contract would indicate that it did not start
to run until after defendant *received* the abstract. Since the trial
court made no factual finding as to when the abstract was received by
defendant nor questioned the credibility of either witness, we are not
clear as to exactly when the trial court found the 60 days to have
expired.

sion of those provisions is not necessary here.[2]

On September 16, 1969, plaintiff directed the following letter to defendant:

"Mr. Boucher, the sixty day option time you had on our land in Whitewater Township, County of Grand Traverse, has expired as of September 7, 1969. We have had no word from you nor have we received any payment. Please be notified that we are withdrawing this land from the market. Send us our abstract back and your $1000 deposit will be refunded. Yours truly, Edward Zenko."

On November 7, 1969, letters from the attorneys for both parties crossed in the mail, plaintiff returning the down payment and citing the cancellation, and defendant enclosing the balance of the down payment, the land contract, and requesting plaintiff to sign the contract. On December 11, 1969, plaintiff instituted this action in the form of a declaratory judgment to have the contract declared null and void. Defendant counterclaimed for specific performance.

Since the trial court's findings of fact were limited to the issues of abandonment, we cannot make a final determination here unless several questions are answered at the trial level. At what point did the 60 days expire? Was plaintiff justified in attempting to terminate the contract on September 16? Did the September 16th letter terminate the contract, or was defendant entitled to a reasonable time after that to complete the purchase? Was defendant's response on November 7th within a

---

[2] It is clear, as Judge O'Hara indicates, that defendant had the option to complete the purchase whether or not the special provisions were fulfilled. However, I do not believe the special provisions gave defendant an unlimited time to complete the purchase, although it may be interpreted to allow a reasonable time to exercise his option to complete the purchase. *Duke v Miller,* 355 Mich 540; 94 NW2d 819 (1959).

reasonable time? Are the "Special Provisions" inserted in the contract by defendant to be interpreted as giving defendant as much time as necessary or a reasonable time to complete the conditions and execute the land contract? And, finally, although the trial judge determined that the contract did not indicate time was of the essence, he did not determine whether, at some point, plaintiff caused time to become an important factor or whether his action manifested a concurrence in an extension of time.

These matters should be remanded to the trial court for consideration. The trial court should be guided by general principles of equity where a reasonable time for performance is inferred when there is no provision that time is of the essence, *Duke v Miller*, 355 Mich 540; 94 NW2d 819 (1959), where an investigation into the contract and surrounding circumstances is necessary to determine the intent of the parties as to time for performance, *Waller v Lieberman*, 214 Mich 428, 439; 183 NW 235 (1921), *Nedelman v Meininger*, 24 Mich App 64; 180 NW2d 37 (1970), and where consideration of the actions of both buyer and seller is warranted to determine whether specific performance is a proper remedy, *Kennedy v Brady*, 43 Mich App 760, 763; 204 NW2d 779 (1972), *Rose v Gilbert*, 320 Mich 455, 459; 31 NW2d 690 (1948).

Without a determination by the trial court of the questions raised here, I think an order from this Court directing specific performance is premature. As this Court reiterated in *Kennedy v Brady, supra,* p 763:

" 'Specific performance is a remedy of grace and not of right, resting within the sound discretion of the court, the granting of which depends upon the peculiar circumstances of each case.' "

I would remand to the circuit court for a determination of such "peculiar circumstances" and for the original exercise of his discretion, being guided by this Court's rejection of the theory of abandonment.

Remanded to the trial court for further determinations in accordance with this opinion and resubmission to this Court which retains jurisdiction.

ALLEN, P. J., concurred.

O'HARA, J. *(for reversal).* This is a case which our British counterparts might well refer to as a "sticky wicket".

It involves an alleged offer and acceptance of the sale of valuable realty in a choice resort area of the northern part of the lower peninsula in Grand Traverse County. The contract specified that the described property consisted of some 160 acres, "including all of Dollar Lake". The purchase price was $95,000. The conveyance was to be made from seller to buyer under the terms of a land contract and subsequently a warranty deed.

Somewhere or somehow the defendant Boucher obtained what is denominated "Lansing Board of Realtors Uniform Offer to Purchase". It is full of big print, little print, fine print and a couple of little rectangular boxes stating therein the costs to be paid by each party.

No realtor is named on the form. It purports to have been executed in Lansing. There are no witnesses' signatures. The parties began by putting the name of the seller in the blank provided for the name of the purchaser.

I am not in the advertising business for the legal profession but it might not have been a bad idea for both parties to have had a counsel with at least

sufficient experience in real estate matters to fill in the right blanks with the right names, or draw one up to fit the terms agreed on. Appellee Zenko[1] was apparently desirous of selling the land in question. Defendant was apparently equally desirous of buying. The parties each completed the blank spaces on the offer-to-purchase form. Of the many provisions in the involved instrument two are of particular significance to the instant case. One provided that: "Purchase *should* be completed in *60 days* after receipt of abstract or title insurance policy commitment and *other evidence of title herein required.*" (Emphasis supplied.) The other section provided:

"8. Special Provisions: This offer subject to [the] preliminary approval of State Board of Health. Survey showing boundaries to include lake. Approval to subdivide in Gr. Traverse County."

The form used, by the way, is one generally utilized by licensed realtors to protect *themselves* and guarantee the payment of their commissions.

What this lawsuit is all about, as best I can make out from the written instrument and the testimony, is that the defendant Boucher wanted to be sure he was getting all of the land surrounding an inland lake, the prior assurance that he could subdivide it and the requisite approval of the State Board of Health.

Incontestably both parties knew, when they signed the instrument I have described, that the state owned a slice of land running down to the lakeshore thus affording—if the state chose to do so—public access to what the seller wanted to have as a limited-access private lake.

---

[1] I use the singular form even though plaintiff's wife also is a party to this action.

Hence it is not strange that it was the buyer who conducted most of the negotiations with the state to acquire the publically owned strip for some other property.[2] Defendant buyer was similarly moving on other fronts to resolve the additional contingencies in paragraph 8, cited above. To obtain preliminary approval from the State Board of Health entailed the preparation of a preliminary survey, which in turn required a topographical map (obtainable only after completion of an aerial survey incapable of being made until the advent of fall denuded foliage on the trees).

It appears from the record, and in fact it is conceded by the seller's attorney, that it was Boucher, the prospective purchaser, who wrote in the special provisions of paragraph 8. He phrased it in terms that were not an absolute condition and lent themselves to waiver on his part if he so chose.

In a letter from an attorney, later engaged by the purchaser, which enclosed a cashier's check for the balance of the down payment, no reference is made to whether or not the wedge of state land had, in fact, been acquired. It makes clear that board of health approval had not been acquired, but with unquestionable certainty makes it clear that Boucher wanted the involved realty, state land included or not and with or without board of health approval.

Manifestly, the seller could not enforce the offer to purchase the land unless paragraph 8 was fulfilled. He agreed to it. He took no precautions against waiver of the condition. He set no time limit for performance except that the "[p]urchase *should* be completed in 60 days after receipt of

---

[2] Subsequent to execution of the purchase agreement defendant buyer had a survey made which positively confirmed that the state, indeed, did own land encroaching on Dollar Lake.

abstract or title insurance policy commitment and *other evidence of title herein required"*. (Emphasis added.) This phrase could not possibly refer to anything but the requirements of paragraph 8. They haven't been fulfilled yet as far as I can tell.

Until the conditions were fulfilled, the agreement was unenforceable against defendant buyer at his option.

It is settled beyond question that conditions precedent may be waived by the party in whose favor they are made. See 17 Am Jur 2d, Contracts, § 392, p 838.

It is a lead-pipe cinch that paragraph 8 was not inserted in this agreement in favor of the seller, nor was the language "other evidence of title herein required".

It may be an unfortunate thing for plaintiff but he took all the aces out of his own deck and gave them to defendant purchaser. One thing a court cannot do is rewrite contracts for the parties to them.

The trial judge, sensing perhaps that this was a completely one-sided agreement, made a finding of fact that the purchaser abandoned the agreement and therefore refused to enforce it.

Abandonment is not lightly to be proved. In this state the law is clearly set forth in *Gaval v Wojtowycz,* 13 Mich App 504, 511; 164 NW2d 724 (1968), which quoted an excerpt from 66 CJ, Vendor and Purchaser, § 295, pp 731–732, often cited in Supreme Court opinions:

> " 'Abandonment by the purchaser is shown * * * *where he positively and absolutely refuses to perform the conditions of the contract,* such as a failure to make payments due, accompanied by other circumstances, * * * *or where by his conduct he clearly shows an*

*intention to abandon the contract.* * * * As a general rule whether or not the purchaser's acts and conduct amount to an abandonment of the contract is a question for the jury, but such acts and conduct may be so decisive and unambiguous as to justify the court in deciding the question as a matter of law.'" (Emphasis in *Gaval.)* See 91 CJS, Vendor and Purchaser, § 121.

In this case all of the evidence is to the contrary. He did everything he possibly could to fulfill his self-imposed conditions. He negotiated with the Department of Natural Resources. He had the required survey made. He attempted to have the aerial survey made for a topographical map but it could not be done at the time because of the dense foliage. Finally, through his attorney, he sent the balance of the down payment. This after several inconclusive telephone conversations.

I do not take findings of fact of a trial judge lightly. I accord them great weight. *Williams v Metoyer,* 46 Mich App 573; 208 NW2d 653 (1973). However, in this case the evidence of abandonment simply does not meet the *Gaval* test.

I would reverse the judgment of the trial court and remand the case with directions to enter an order granting defendant specific performance and award costs to the defendant.