IHLENFELDT v GUASTELLA

1. Vendor and Purchaser—Contracts—Breach.

Plaintiff vendees breached the terms of an agreement for a sale of land when, after receiving a title insurance commitment from defendant vendors within the agreed-upon time, the plaintiffs failed to notify defendants of their objections to the title in writing or to afford defendants 30 days thereafter to remedy the title or to obtain title insurance, as agreed, but rather, one day before the closing date, repudiated the agreement *in toto* even though there was no proof that defendants were unable to remedy the objections to title or furnish title insurance.

2. Vendor and Purchaser—Contracts—Breach—Deposit—Liquidated Damages.

Vendors of land were justified in retaining the purchaser's deposit as liquidated damages for keeping their property off the market for about two months anticipating the purchaser's acceptance of their title and fulfillment of the contract of sale, where they furnished the purchaser a title insurance commitment showing the state of the title and the purchaser did not notify them of objections to title in writing or give them 30 days thereafter to remedy the title as provided in the contract but repudiated the contract on the day before closing.

3. Contracts—Future Event—Promisor's Act—Implied Agreement.

An implied agreement exists when a contract is performable on the occurrence of a future event that the promisor will place no obstacle in the way of the happening of the event, particularly where that event is dependent in whole or in part on his own act.

Appeal from Macomb, Walter P. Cynar, J. Sub-

References for Points in Headnotes

[1] 55 Am Jur, Vendor and Purchaser § 270 *et seq.*
[2] 55 Am Jur, Vendor and Purchaser § 641.
[3] 17 Am Jur 2d, Contracts § 321 *et seq.*

mitted Division 2 November 5, 1971, at Detroit. (Docket No. 10558.) Decided August 28, 1972. Leave to appeal denied, 389 Mich 754.

Complaint by Wilbur L. Ihlenfeldt and Daly Realty, Inc., against Philip Guastella and Marion Guastella to recover preliminary purchase agreement deposit. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Dyer, Meek, Ruegsegger & Bullard* (by *Willis C. Bullard* and *John G. Bacon*), for plaintiffs.

*Wesley J. Roberts*, for defendants.

Before: V. J. BRENNAN, P. J., and J. H. GILLIS and O'HARA,* JJ.

J. H. GILLIS, J. This is an assumpsit action in which the plaintiffs-vendees are seeking to recover a $5,000 deposit they paid pursuant to the terms of a preliminary purchase agreement. The defendants-vendors prevailed below upon the trial court's finding of no cause of action, entered November 20, 1969.

Under the terms of the agreement between the parties plaintiffs' deposit was to serve as liquidated damages for the defendants should the plaintiffs default. Conversely, upon a default by the defendants, the deposit was to be returned immediately to the plaintiffs in full termination of the agreement. Had neither party defaulted the deposit was to be applied against the purchase price. Our principal concern upon appeal is to determine whether or not the trial court correctly adjudged that the plaintiffs initially defaulted upon the agreement between the parties.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

The plaintiffs, purchasers and franchisers of drive-in restaurant properties, allege that the defendants failed to comply with the land contract agreement by not being able to tender the property in question free of encumbrances and with a clear and marketable title as of the date of closing. This closing date was originally set for September 29, 1967, but by mutual agreement was extended until October 31, 1967. On October 5, 1967, the plaintiffs received, pursuant to the agreement, a commitment for title insurance which indicated that the property in question was subject to a mortgage and a security interest,[1] and was recorded in the name of persons other than the defendants,[2] a fact that the trial court found was previously known to the plaintiffs. On the day before the closing date, October 30, 1967, the plaintiffs sent a letter to the defendants announcing that they were terminating the agreement, in part because of the unmarketability of the title of the property.

The trial court held for the defendants upon a finding that the title was marketable. The trial court also indicated that the plaintiffs sought to escape the contract because certain financing arrangements they desired fell through. However, the view we take of the present case makes an evaluation of these findings unnecessary since it is obvious from the facts that the plaintiffs failed to comply with the terms of the agreement and thereby were initially responsible for whatever breach occurred.

Paragraph 5(a) of the agreement reads:

---

[1] A financing statement upon the fixtures was filed. Testimony that this security interest was in fact paid was not controverted below.

[2] The defendants had a land contract vendees' interest in the property, being purchasers of the property from the holders of record title.

"Seller agrees to furnish Daly as soon as possible an abstract or a commitment for a policy of title insurance in an amount not less than the purchase price of Seventy-Five Thousand Dollars ($75,000.00) and bearing date later than the date of this agreement guaranteeing marketable title in the condition required for performance of this agreement. If objection to the title is made, based upon a written opinion of Daly's attorney that the title is not in the condition required for performance hereunder, the seller shall have 30 days from the date he is notified in writing of the particular defects claimed, either (1) to remedy the title, or (2) to obtain title insurance as required above, or (3) to refund the deposit in full termination of this agreement if unable to remedy the title or obtain title insurance. If the seller remedies the title or shall obtain such title policy within the time specified, Daly agrees to complete the sale within 10 days of written notification thereof. If the seller is unable to remedy the title or obtain title insurance within the time specified, the deposit shall be refunded forthwith in full termination of this agreement. Seller agrees to vacate the premises on the closing date, and seller shall pay the sum of Twenty-Five Dollars ($25.00) per day as liquidated damages if he continues to occupy the premises after the date to vacate."

After consideration of the briefs and oral arguments, this Court initially remanded this case *sua sponte* to the trial court with directions to make specific findings of fact regarding the quoted provision in the following two particulars:

"(1) Was the above provision complied with by the plaintiffs-appellants?
"(2) If there was noncompliance with the above provision, was there a waiver of this requirement by the defendants-appellees."

The trial court answered each of the two questions in the negative. We agree with these findings. Here the defendants-sellers furnished the commit-

ment for title insurance as provided for on October
5. There is no evidence that upon receiving this
commitment plaintiffs at any time prior to October
30 notified the defendants of their objections to the
title in writing or afforded the defendants 30 days
thereafter to remedy the title or obtain title insur-
ance. Nor is there any proof that defendants were
unable to comply with either of these conditions.

In *Schwartz v Woodruff,* 132 Mich 513, 515
(1903), a seller of land sought to foreclose a land
contract against a purchaser in default of pay-
ment. The purchaser objected to the encumbrances
on the title, raising these as a defense to his
breach. But the Court there allowed the seller to
prevail because the purchaser failed to make his
objections known at the time of the tender. The
Court stated:

> "As no such objection was made at the time of the
> tender, it would be inequitable to permit that objection
> to prevail now for the purpose of defeating this suit.
> When complainant commenced this suit, he had a right
> to assume that the title tendered by him was suffi-
> cient."

We think that the same equitable principles
apply here, where after being aware of the alleged
defects in the title since October 5 the plaintiffs
waited until the day before closing to renounce the
agreement. This fact is aggravated further by
considering that when plaintiffs did finally re-
nounce the agreement, they did so in complete
disregard of paragraph 5.[3] Although repudiation of
a contract may be allowed in cases where it ap-
pears unlikely that the vendor will, or can, clear
the objectionable title, *Deane v Rex Oil & Gas Co,*

---

[3] We note also that this agreement was originally drafted by an
attorney for the plaintiffs.

325 Mich 625 (1949), *Escher v Bender,* 338 Mich 1 (1953), in the present case the parties themselves provided the vendors with a 30-day period in which to cure any defects. Plaintiffs' repudiation of this provision is thus more analogous to the situation in *Silfver v Daenzer,* 167 Mich 362 (1911), where the plaintiff-purchaser rescinded a land contract while the defendant-vendor was in the process of curing the defects of a title, which, by their agreement, had not yet passed to the plaintiff. In *Silfver* the plaintiff-purchaser was held to have defaulted and could not recover his down payment. See also *Adadow v Perry,* 225 Mich 286 (1923); *Detroit Fidelity & Surety Co v Bushman,* 260 Mich 115 (1932).

The defendants were entitled to a written notice of any objection to the title and were further entitled to expect, under the agreement, a 30-day period in which to remedy such objection or to obtain title insurance. Otherwise the defendants had a right to assume that the title tendered by them was sufficient to comply with the agreement. The defendants kept their property off the buyer's market for about two months anticipating plaintiffs' acceptance of the title and fulfillment of the contract on October 31. The defendants were thus justified upon the plaintiffs' default to retain the deposit as liquidated damages.

Because this case has been resolved without a discussion of the marketability of the defendants' title to the property involved, we need not determine whether error was committed below when the trial court allowed an expert witness to testify that in his opinion the title was marketable. Nor do we find merit in the plaintiffs' claim that they could properly terminate the agreement on October 30 because one of the conditions precedent to

closing was not satisfied. The condition precedent involved was a matter over which plaintiffs had some control, and the evidence suggests that they made little or no effort to fulfill the condition. Where a contract is performable on the occurrence of a future event, there is an implied agreement that the promisor will place no obstacle in the way of the happening of such event, particularly where it is dependent in whole or in part on his own act. *Hayes v Beyer,* 284 Mich 60 (1938), *Mehling v Evening News Association,* 374 Mich 349 (1965).

Affirmed. Costs to appellees.

All concurred.