856 F.2d 196
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John SMITH, Kenneth Roberts, and Ambassador East Development
Corporation, a Michigan Corporation, Plaintiffs-Appellants,
v.
PENN CENTRAL CORPORATION, a Pennsylvania corporation,
Defendant-Appellee.
 No. 87-1332.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1988.
 
 Before KENNEDY and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellants, John Smith, Kenneth Roberts and the Ambassador East Development Corporation (collectively referred to as plaintiffs), appeal the District Court's grant of summary judgment in favor of defendant the Penn Central Corporation in plaintiffs' diversity suit for specific performance of an agreement for the sale of land. Plaintiffs also appeal the District Court's grant of partial summary judgment in favor of defendant on defendant's counterclaim for breach of contract. The central question in this appeal is whether plaintiffs and not Penn Central have breached the agreement. Because we find that Penn Central discharged its responsibilities under the agreement and plaintiffs did not, we affirm the judgment of the District Court.
 
 
 2
 This dispute involves the parties' actions under an agreement for the sale of land dated May 10, 1985 (Agreement) in which Penn Central agreed to sell a 42 acre railroad yard (parcel A) and a connected railroad right of way (parcel B) to plaintiffs for $3,750,000.00. Following negotiations the parties agreed that Penn Central would convey by quitclaim deed the property described in Exhibit A to the Agreement (which covers both parcel A and parcel B). The Agreement required Penn Central to tender the deed at the closing in a form substantially identical to that shown in Exhibit C to the Agreement with no warranties of title. The property description in Exhibit A is not a survey description (Penn Central had none) and the Agreement did not require that a survey description be provided by Penn Central. Joint Appendix (JA) at 204.
 
 
 3
 Plaintiffs had an option under the Agreement to accept Penn Central's title "as is" or they could obtain a title search and report as their sole responsibility. If plaintiffs ordered such a title report (which they did) the Agreement required Penn Central to use its "best efforts to correct" any exceptions stated in the report "to which [plaintiffs] object[ ] and which render [Penn Central's] title ... less than fee simple." JA at 205. Notwithstanding plaintiffs' right to obtain a title report, the Agreement specifically stated that title objections were subject "to the qualification that [plaintiffs] will accept whatever title, if any, [Penn Central] may have in and to street and road crossing areas." JA at 205.
 
 
 4
 The Agreement specified that time was of the essence and that the closing was to be held no later than October 7, 1985 with plaintiffs making full payment of the purchase price and accepting Penn Central's deeds at that time. JA at 206. The only supplemental agreement to the Agreement was the placement of $100,000.00 earnest money deposit in escrow with the American Title Insurance Company. If plaintiffs defaulted, Penn Central could declare the Agreement null and void and keep the plaintiffs' $100,000.00 deposit. JA at 203, 206.
 
 
 5
 After obtaining the title reports for the parcels, plaintiffs ultimately raised objections and requested answers to a number of items in the reports.[1] Plaintiffs requested an indemnity for any undiscovered property tax liability as to parcel A, evidence that certain alleys and streets in both parcels had been vacated, and an up-to-date survey and description of parcel B. Penn Central refused to provide property tax indemnification for parcel A and refused to provide evidence of vacation for the streets and alleys based upon the provision in the Agreement excepting title to street and road crossing areas from permissible objections. Additionally Penn Central, having no survey of parcel B and no obligation to provide one, refused the last request believing that the parcel survey request did not affect Penn Central's fee title to the property.
 
 
 6
 By letter dated September 26, 1985, Penn Central transmitted to plaintiffs proposed closing documents including two deeds. Penn Central provided separate deeds for parcel A and parcel B. The proposed parcel A deed left a large blank area for insertion of the anticipated survey description (which was added prior to the closing date). The parcel B deed contained the applicable portion of the property description from the Agreement's Exhibit A.[2] Because Penn Central did not receive the survey description of parcel B as of the closing date Penn Central informed plaintiffs that it would execute another deed after the closing containing the survey's description of parcel B. Penn Central did not attempt to remedy plaintiff's other objections. JA at 212-14.
 
 
 7
 On October 7, 1985 Penn Central's representatives appeared for the closing. Plaintiffs did not produce the necessary funds to consummate the transaction nor did they tender performance, stating that Penn Central had failed to cure the exceptions listed in plaintiffs' title reports. After plaintiffs' attorney stated there would be no closing, Penn Central claimed plaintiffs' default and demanded the escrowed funds. The request was denied. Plaintiffs filed suit that same day. JA at 215.
 
 
 8
 On appeal plaintiffs argue that because Penn Central allegedly had not complied with the terms of the Agreement by the closing date, plaintiffs' failure to tender the balance of the purchase price at that time was not a default by plaintiffs and therefore plaintiffs may maintain the present action for specific performance. Plaintiffs' argument fails at its inception because, as found by the District Court, the objections raised by plaintiffs did not render Penn Central's title to the premises with the exception of the street and road crossing areas less than fee simple absolute. Furthermore the deeds tendered at the closing by Penn Central were proper as a matter of law.
 
 
 9
 First, Penn Central had no duty to remedy plaintiffs' title report objections. Penn Central was to give plaintiffs a quitclaim deed with no warranties of title and was not under any obligation under the Agreement to provide title insurance or assist in obtaining it. Under the Agreement Penn Central was required to attempt to cure only those exceptions that would render Penn Central's title less than fee simple. Plaintiffs' first objection--that Penn Central indemnify the title company against any undiscovered taxes--is clearly unrelated to the question of Penn Central's fee simple title to the property. The District Court recognized that such an indemnity would conflict with Penn Central's agreement to provide a quitclaim deed. See JA at 230-31. Plaintiffs' second objection--that Penn Central provide evidence that certain streets and alleys had been vacated--controverts the Agreement itself because the Agreement required plaintiffs to accept whatever title, if any, Penn Central may have had in these areas. JA at 230. Finally, plaintiffs' third objection--that Penn Central provide a survey description of parcel B--does not cast doubt upon Penn Central's holding in fee simple. As the District Court noted: "The fact that plaintiffs' title company may not have wished to issue a title policy in no way suggests that Penn Central was unable to convey fee title to the premises." JA at 230. Furthermore, the Agreement did not require a description more detailed than that contained in Exhibit A to the Agreement; plaintiffs' inability to determine Penn Central's fee title to their satisfaction because of plaintiffs' own failure to obtain a survey "is not an objection contemplated by the plain meaning of the contract." JA at 230. Accordingly, nothing existed for Penn Central to remedy.
 
 
 10
 Second, the deeds tendered by Penn Central were proper. Plaintiffs assert that their refusal to consummate the transaction was justified, first, because the parcel B deed tendered by Penn Central did not contain a survey description and as a result was rendered unrecordable and, second, because Penn Central tendered separate deeds for parcels A and B instead of a single deed covering both parcels. We reject these arguments. Regarding the first argument, the Agreement did not require a survey description of the parcel B deed. As required by the Agreement the parcel B deed supplied by Penn Central conformed to Exhibit C and recited verbatim the portion of the property description of parcel B located in Exhibit A. The parcel B deed is sufficient under Michigan requirements for quitclaim deeds. See Mich.Comp.Laws Ann. Sec. 565.152 (West 1967). See also Tuthill v. Katz, 163 Mich. 618, 627, 128 N.W. 757, 761 (1910). Furthermore, Penn Central was not obligated under the Agreement to provide recordable instruments nor does Michigan law require that a deed be recordable in order to satisfy an agreement to sell.[3] See, e.g., Evans v. Holloway Sand & Gravel, Inc., 106 Mich.App. 70, 82, 308 N.W.2d 440, 444 (Mich.Ct.App.1981).
 
 
 11
 Lastly, Penn Central's tender of separate deeds for the two parcels was permissible. Penn Central tendered two deeds in response to plaintiffs' provision of a survey description for parcel A but not for parcel B. The use of two deeds was a de minimis variation from the terms of the Agreement, not a breach. If plaintiffs had complained of this problem prior to or even at the closing, Penn Central asserts it could have executed and tendered a single deed at that time. Appellee's Brief at 39. Plaintiffs should not now be allowed to object to the tender of two deeds when plaintiffs both failed to provide the survey of parcel B by the closing date and failed to complain when two deeds were offered. See Ihlenfeldt v. Guastella, 42 Mich.App. 384, 390, 202 N.W.2d 327, 330 (Mich.Ct.App.1972).
 
 
 12
 In sum, Penn Central was in full compliance with the Agreement at the time of the closing and fully performed its duties under the Agreement. Plaintiffs' suit is not in reality a suit for specific performance because, as the District Court found, Penn Central fully performed; plaintiffs essentially hoped to impose additional duties upon Penn Central to which the parties never agreed. This we refuse to do. See Smeader v. Mason, 341 Mich. 139, 143, 67 N.W.2d 131, 133 (1954). The District Court properly granted summary judgment against plaintiffs under these circumstances.
 
 
 13
 It is indisputable that plaintiffs did not accept Penn Central's deeds or other closing documents at the time of the closing--a direct breach of the Agreement. JA at 53. The Agreement specifically states that time is of the essence and at no time did Penn Central agree to later time deadlines. JA at 206. Under Michigan law if an agreement declares time to be of the essence the parties must meet their obligations on time. See, e.g., Friedman v. Winshall, 343 Mich. 647, 656, 73 N.W.2d 248, 254 (1955); Nedelman v. Meininger, 24 Mich.App. 64, 74, 180 N.W.2d 37, 43 (Mich.Ct.App.1970). Plaintiffs' failure to accept Penn Central's closing documents at the October 7, 1985 closing is a default. Plaintiffs have no basis to claim that they were excused from closing on October 7, 1985 per the Agreement between the parties.
 
 
 14
 When plaintiffs chose not to tender payment and otherwise close the deal, they did so at their own risk. Under Michigan law if a purchaser elects to bring a claim for specific performance and loses, he suffers the consequences of his default--including forfeiture of any deposit made. See, e.g., Friedman, supra; Nedelman, supra. The result of the District Court's judgment for Penn Central on its counterclaim for breach of contract is that Penn Central is entitled under the Agreement to the earnest money deposit plaintiffs placed in escrow with American Title.
 
 
 15
 Accordingly, the judgment of the District Court is AFFIRMED.
 
 
 
 [1]
 Although the timeliness of plaintiffs' notification of exceptions appears to have been a disputed fact below, we will assume, as did the district court, that such notice was sufficient and timely
 
 
 [2]
 The title company determined that the deed for parcel B, even though identical to the Agreement's Exhibit C and containing the applicable portion of the property description from the Agreement's Exhibit A as per the Agreement, was "unrecordable" because it allegedly could not be posted to the tract index at the Wayne County Register of Deeds. JA at 307
 
 
 [3]
 In any event, Penn Central asserts, the parcel B deed is recordable as it contains all the formalities required by Michigan's recording statute. See Mich.Comp.Laws Ann. Sec. 565.201, .201a & .203 (West 1967)